STEVE COLLINS, Plaintiff-Appellant, v. HYSTER COMPANY, Defendant-Appellee and Third-Party Plaintiff (Feeney Oil Company, Third–Party Defendant-Appellee).

Third District   No. 3—87—0785

Opinion filed September 30, 1988.

Allen & Clark, Ltd., of Peoria (Gary L. Clark, of counsel), for appellant.

David A. Perkins, of Heyl, Royster, Voelker & Allen, and Quinn, Johnston, Henderson & Pretorius, Chartered, both of Peoria (Rex K. Linder and W. Thomas Johnston, of counsel), for appellee.

JUSTICE SCOTT delivered the opinion of the court:

This case comes on appeal pursuant to appellant's petition for leave to appeal under authority of Supreme Court Rule 306 (107 Ill. 2d R. 306) from a post-trial order of the circuit court of Peoria County granting appellant's alternative request for a new trial. We allowed appellant's petition.

Plaintiff-appellant, Steve Collins (plaintiff or Collins), was employed as a general laborer by third–party defendant-appellee, Feeney Oil Company (Feeney), in Normal, Illinois, and had, at the time of the incident complained of, been so employed for roughly five weeks. On October 18, 1979, plaintiff was operating a forklift belonging to Feeney when the forklift fell on its side and pinned him partially underneath. Plaintiff lost consciousness at the time of the accident, and upon regaining it, was unable to remember anything that happened during the preceding four days, including any details of the accident itself; he has not since regained his memory and there were no other

witnesses to the accident.

The forklift in question was designed and manufactured by defendant and third–party plaintiff-appellee Hyster Company (Hyster) between 1958 and 1960 as Model H-25-E. It was originally sold by Hyster in 1963 to Monticello Cob Company, which in turn sold it to Feeney in 1977. While owned by Monticello Cob Company, the forklift was fitted with an overhead guard and a propane gas tank as contemplated by the Hyster owner's manual for that model. Feeney made no additional changes. At no time was the forklift equipped with seat belts prior to or on October 18, 1979, and likewise had no warnings attached to it. Feeney did not receive an owner's manual when the forklift was purchased from Monticello Cob Company; however, a manual was available from any Hyster dealer.

The Feeney parking lot accommodates heavy truck traffic, which causes the development of shallow indentations or depressions in the compacted gravel surface. Plaintiff testified that these indentations were present in the parking lot area during the entire five weeks he had worked for Feeney.

At the time of his employment by Feeney, plaintiff had not previously operated a forklift. Prior to his operation of Feeney's forklift, he was provided a 15-minute demonstration of the operation of the levers and may have been warned to be careful when driving it. Plaintiff did state, however, that he knew his visibility was impaired when driving with the forks in a raised position and had observed the way others drove the machine. He further indicated that he always drove the forklift slowly across the parking area with the forks in the lowered position.

Plaintiff filed his action in 1981 naming Hyster as the only defendant and on the theory of simple negligence. Hyster filed a third-party complaint for contribution against Feeney. The case ultimately went to trial on the following theories:

(a) negligently failed to adequately warn the user that the forklift truck should not be operated with the forklifts in the raised position;

(b) negligently failed to adequately warn the user of the hazards of operating the forklift truck over rough terrain;

(c) negligently designed and manufactured the forklift so that it was unstable;

(d) negligently failed to equip the forklift with seat belts.

The first three theories were set out in the original complaint; the fourth was added by amendment. Three additional allegations of negligence which plaintiff added by amendment were stricken by the trial court prior to trial. These allegations had to do with Hyster's alleged

negligence subsequent to its sale of the forklift.

After presentation of plaintiff's evidence, Hyster moved for a directed verdict. Plaintiff conceded there was no evidence regarding allegation (a) above and it was removed from jury consideration. The court thereafter directed a verdict for defendant on allegation (c) and (d) but allowed the case to go to the jury on the single question of whether Hyster was negligent in failing to warn users of the hazards of operating the forklift over rough terrain. The jury rendered a verdict in favor of the plaintiff and against Hyster and a verdict in favor of Hyster and against Feeney for 50% contribution.

Hyster then filed a motion for judgment notwithstanding the verdict (n.o.v.) which was granted by written order of Judge Joe B. McDade entered December 29, 1986. Plaintiff, on January 19, 1987, filed a post-trial motion asking that the verdict be reinstated or alternatively that the court grant a new trial. Prior to the court's ruling on plaintiff's post-trial motion, plaintiff filed a motion for change of judge, which was granted and the case was assigned to Judge Stephen Covey. Judge Covey subsequently vacated the judgment n.o.v. and ordered a new trial. Plaintiff then petitioned for and was granted by this court leave to appeal pursuant to Supreme Court Rule 306. Plaintiff asks that this court reinstate the jury verdict. On review, we will consider all post-trial rulings of the trial court as allowed by Supreme Court Rule 306(a)(2). 107 Ill. 2d R. 306(a)(2).

The primary issue in this case is whether there was sufficient evidence of negligence to support the verdict. Secondary issues include whether the trial court properly denied the admission of certain evidence and improperly denied certain allegations of negligence from being considered by the jury.

■■ In negligence actions, a plaintiff must establish: (1) that defendant had a duty to act with reasonable care towards plaintiff; (2) that defendant breached the duty; (3) that plaintiff's injury was the proximate result of defendant's breach of duty; and (4) damages. Failure of the plaintiff to establish any one of these essential elements requires a directed verdict for the defendant. *Lucker v. Arlington Park Race Track Corp.* (1986), 142 Ill. App. 3d 872, 492 N.E.2d 536.

During the course of this case, the court made certain evidentiary rulings which plaintiff asserts were erroneous. They are: (1) finding that Hyster had no duty to install seat belts on the forklift when manufactured; (2) striking the allegations of a continuing duty to warn; (3) restricting the testimony of plaintiff's expert; and (4) refusing to admit certain exhibits into evidence.

■■ The trial court's finding that Hyster had no duty to install

seat belts was proper in that plaintiff presented no evidence that Hyster, in exercise of ordinary care, had a duty to install seat belts on forklifts in 1963. The question of whether the facts in any given circumstances establish the existence of a duty is determined as a matter of law. (*Miller v. Dvornik* (1986), 149 Ill. App. 3d 883, 501 N.E.2d 160; *Kirby v. General Paving Co.* (1967), 86 Ill. App. 2d 453, 229 N.E.2d 777.) Plaintiff's only evidence regarding the use of seat belts was the testimony of his expert witness, Dr. Marvin VanEtten, who stated that seat belts were generally available at the time of manufacture. He did not, however, indicate or have any knowledge of any facts from which a legal duty could be imposed on Hyster to install seat belts on its forklifts in 1963. Although expert testimony is not required in negligence actions, before a jury can decide whether a defendant has acted unreasonably, there must be a legal duty imposed on the defendant. Plaintiff failed to show that Hyster knew or should have known, in the exercise of ordinary care, that seat belts should be installed as a safety device on its forklifts. A duty cannot be imposed solely on the allegation that the forklift was not equipped with seat belts.

■ Regarding plaintiff's allegations of a continuing duty to warn, the order of the trial court gives no reason why those allegations were stricken. Nonetheless, the trial court's ruling is correct in that we have not discovered any authority in Illinois for extending the duty to warn beyond the time when the product left the manufacturer's control unless Hyster knew or should have known at that time that the product was defective. Here, there is no evidence that Hyster should have known the product was defective at the time it left Hyster's control of which it would have had a continuing duty to warn against in the event the hazard was discovered subsequent to the time it left the manufacturer's control. Certainly the law does not contemplate placing the onerous duty on manufacturers to subsequently warn all foreseeable users of products based on increased design or manufacture expertise that was not present at the time the product left its control.

■■ Plaintiff also argues that the trial court erred in restricting the testimony of Dr. VanEtten. The trial court basically allowed Dr. VanEtten to testify about general safety principles involved in the design and manufacture of products, but ruled that Dr. VanEtten lacked the expertise to testify about forklifts and the manufacture of forklifts in 1963. Whether a witness is qualified to testify as an expert is within the sound discretion of the trial judge. (*Johnson v. Commonwealth Edison Co.* (1985), 133 Ill. App. 3d 472, 478 N.E.2d 1057.) The

"standard for admissibility of expert testimony is whether such testimony will aid the jurors' understanding of the facts." (*Johnson*, 133 Ill. App. 3d at 484, 478 N.E.2d at 1065.) As stated above, Dr. VanEtten was allowed to testify regarding matters of which he had knowledge. On *voir dire* examination by Hyster, however, Dr. VanEtten admitted that he had no knowledge regarding the manufacture or design of forklifts in 1963 and therefore would not, in the opinion of the court, aid the jurors' understanding of whether Hyster exercised reasonable care in the design and manufacture of its forklifts. He simply was not qualified to testify about any specifically alleged acts of negligence since he had no knowledge to share with the jury concerning forklifts and the state of that particular industry in 1963. The trial court did not abuse its discretion in limiting Dr. VanEtten's testimony.

■ During the trial plaintiff attempted to admit two documents into evidence which outlined certain tests performed by Hyster on various models of forklifts, including a production model of the forklift in question. Two objections were made to the admissibility of the exhibits; lack of proper foundation and relevancy. The trial court sustained the objections and refused to admit the documents into evidence. Again we believe the trial court did not abuse its discretion in denying the admission of these documents into evidence.

Plaintiff attempted to authenticate the documents, identified as exhibits 13 and 14, through the testimony of Marvin Welch, a risk manager employed by Hyster. As a risk manager, Mr. Welch was responsible for self-insurance programs for products, general liability losses, and attempting to purchase insurance for Hyster. He was not the custodian of the records and was not qualified to testify that exhibits 13 and 14 were made in the regular course of business. Moreover, Mr. Welch was unable to indicate whether the test model H25E was similar to the model H25E in question. Therefore, plaintiff was unable to establish that the exhibits were relevant to this case even though the documents on their face indicated that the tests were on the same model of forklift as the one plaintiff was operating.

The primary issue in this case, however, and the issue before the jury, was whether Hyster was negligent in failing to place a warning on the forklift indicating the hazards of operating it over rough terrain. The jury returned a verdict for plaintiff, but the trial judge subsequently granted Hyster's motion for judgment notwithstanding the verdict. That order was superseded by a second trial judge's order for a new trial.

In its order setting aside the jury verdict and entering judgment

*n.o.v.* for defendant, the trial judge ruled that there was no unequal knowledge concerning the hazards of driving the forklift over uneven ground; moreover, that there was no evidence upon which a reasonable inference could be made that driving through the "pothole" caused the forklift to overturn and, thus, be a proximate cause of the injury. Plaintiff argues that the court should not focus on the cause of the tip-over but on the cause of the injury. That distinction may arguably be valid had this case gone to the jury on the question of whether defendant was negligent in not providing a seat belt. However, as to the question of driving the forklift over uneven surfaces, the actual cause of the tip-over must be shown to be the proximate result of the uneven surface. If the cause of the tip-over was some reason other than the uneven surface, a charge of negligence based on failing to warn about the hazards of driving over an uneven surface cannot produce a recovery. Therefore, proof of proximate cause of the tip-over is essential in proving the proximate cause of the injury.

A jury verdict should be set aside and a verdict directed in favor of the moving party when all of the evidence, viewed in a light most favorable to the nonmoving party, so overwhelmingly favors the moving party that no contrary verdict based upon the evidence could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.) As with any other negligence action, however, before a party can be adjudged negligent, that party must first have a duty to act with reasonable care towards another. Here, the initial question is whether Hyster had a duty in this case to warn plaintiff about the hazards of driving the forklift over rough or uneven terrain. As stated above, that question is made as a matter of law, but undoubtedly must be based on the facts presented. A duty to warn of a particular hazard will be imposed where there is unequal knowledge, either actual or constructive, and the defendant knows or should know that injury may occur if no warning is given. (*Illinois State Trust Co. v. Walker Manufacturing Co.* (1979), 73 Ill. App. 3d 585, 392 N.E.2d 70.) In its order granting judgment *n.o.v.*, the trial court determined there was not unequal knowledge of the hazard and we concur. Plaintiff testified that he had been employed by Feeney for roughly 5½ weeks prior to the accident; that during the course of his employment he operated the forklift in question approximately 20% to 25% of the time; moreover, that he was aware of the depressions in the parking lot area and as a matter of common sense always drove the forklift slowly with the forks in a lowered position through the area. Coupled with plaintiff's testimony are the undisputed facts that

plaintiff is unable to remember anything about the incident and no one observed the accident. Based on plaintiff's testimony regarding his usual manner of operating the forklift, we have no reason to believe that he was not aware of the hazards involved in driving the forklift over uneven surfaces. Plaintiff's argument that he should have been warned of these hazards, and that Hyster's failure to do so was negligence, is contrary to his testimony at trial.

In *Bakovich v. Peoples Gas Light & Coke Co.* (1963), 45 Ill. App. 2d 182, 188, 195 N.E.2d 260, 263, the court stated, "The purpose of warning is to apprise a party *** of a danger of which he is not aware ***." it is clear that Hyster had knowledge of the forklift's instability when driven over uneven surfaces. The operating manual for the forklift in question can reasonably be construed so as to create a duty to warn of hazard. Here, however, plaintiff's testimony that he was aware of the uneven surface of the parking area and that he had driven the forklift without incident in that area on and off for about five weeks leads to the conclusion that plaintiff was equally aware of the hazards. Although plaintiff did not have the benefit of reading the operator's manual prior to operating the forklift, he had actual knowledge that the forklift was to be driven slowly over the uneven surface of the parking area in question. Therefore, we conclude, as a matter of law, that Hyster had no duty to warn of the hazard of operating the forklift over uneven surfaces in this particular case. Accordingly, the trial court's order, entered October 16, 1987, vacating the judgment *n.o.v.* is reversed, and the trial court order entered December 27, 1986, vacating the jury verdict and entering judgment *n.o.v.* for both defendants is reinstated and affirmed.

Reversed.

STOUDER, P.J., and HEIPLE, J., concur.