JAMES M. SMITH, Plaintiff-Appellant, v. AMERICAN MOTORS SALES CORPORATION, Defendant-Appellee.

First District (5th Division)    No. 1—89—1119

Opinion filed June 14, 1991.

Karlin & Fleisher, of Chicago (David A. Novoselsky, Linda A. Bryceland, and Michael Leuer, of counsel), for appellant.

Peterson, Ross, Schloerb & Seidel, of Chicago (Tracy C. Beggs and Mary F. Andreoni, of counsel), for appellee.

JUSTICE GORDON delivered the opinion of the court:

In this products liability case, the principal question which we face is whether the injured plaintiff, James M. Smith (Smith), seeking recovery upon the theory of strict liability in tort, must establish that the risks inherent in driving a Jeep with his bare left foot extended outside of the passenger compartment did not constitute an open and obvious danger. We conclude that he failed to establish a material issue of fact as to whether there existed an unreasonably dangerous design defect of which defendant American Motors Sales Corporation (American Motors) needed to warn. Accordingly, we find no error in the trial court's grant of summary judgment in favor of American Motors, and we therefore affirm the ruling.

On December 18, 1984, plaintiff filed a product liability suit against American Motors, the Jeep manufacturer, alleging that the car was not fit for its intended purposes. An amended complaint was subsequently filed joining the distributor Highland Park Motors as a defendant, which defendant was dismissed from the case after certifying American Motors as the Jeep's manufacturer pursuant to the products liability provision of the Code of Civil Procedure. Ill. Rev. Stat. 1987, ch. 110, par. 2—621.

American Motors moved for summary judgment, claiming in its motion that the danger to Smith of putting his bare left foot outside the moving car was open and obvious, that there existed no unreasonably dangerous defects, and that the manufacturer had no duty to warn Smith of the inherent risks involved in his activity. Alternatively, American Motors argued that there was insufficient credible evidence of an unreasonably dangerous defect.

The undisputed facts before the trial court were that on the warm summer night of July 14, 1984, at 9 p.m., 26-year-old Smith was driving his American Motors CJ-7 Jeep at approximately 40 miles per hour southbound in the left lane of Milwaukee Road, a four-lane avenue without a median separating traffic. Earlier that evening, Smith testified that he removed the Jeep's detachable top, left and right side doors.

While driving, Smith placed his bare left foot on the car's outside step, a small metal plate attached to the Jeep below the sill of the door designed to aid entry and exit. He claimed later in his deposition that he did this because both the Jeep floor was warm and he felt

cramped against the steering wheel due to the minimal leg space and inability to adjust the car seat. Unfortunately, an oncoming car struck his Jeep's driver's side, seriously injuring Smith's left leg and foot.

In his deposition, which was submitted both by the movant and respondent, Smith further attested that he did not ponder the safety of putting his foot on the outside step. He did realize, however, that it was "common sense" that his foot would have been better protected in the car. When asked by American Motors during his deposition whether he had seen anything to indicate that this step was designed as a footrest for traveling, Smith stated that he did not recall seeing anything that made him "judge it one way or the other." He did claim that he had observed other people driving with their left feet on the body step of the Jeep in traffic. Moreover, Smith also testified that he viewed the American Motors commercials where the individuals operating the CJ-7 Jeeps had their knees extended outside the doors of the vehicle while driving it. But, he further testified that he never saw any American Motors commercials or advertisements depicting the step as a footrest or suggesting that he safely could put his foot out of the car while driving.

Respondent Smith submitted the affidavit of his expert, John M. Stilson, a consulting engineer offering evaluative services in the areas of vehicular safety, product design defect analysis, and investigation into engineering problems. Stilson's personal inspection of the Jeep taken on April 26, 1985, permitted his testimony that the vehicle was defectively designed due to the following: (1) lack of a protective shield for the step; (2) presence of removable passenger and driver doors; (3) inability of the driver to adjust the driver's seat due to the lack of such adjustment; (4) location of the step near the driver position; (5) inadequate passenger compartment floor and dash insulation; and (6) failure to warn the operator to keep all body parts inside the passenger compartments.

Stilson further attested:

> "Such design defects rendered the jeep unreasonably dangerous by inviting the driver to operate it with his foot outside the passenger compartment. The lack of adequate insulation, presence of removable doors, and location of the step encouraged the driver to position his limb outside the vehicle while it was being operated. The lack of seat adjustment further added to this by restricting the leg from room available inside the passenger compartment. The presence of a protective shield would have served to avoid or lessen the severity of the injuries he did receive."

American Motors further submitted photographs of the Jeep showing its construction and the body side step.

Based upon the foregoing submissions, the trial court granted American Motors' motion for summary judgment which we affirm.

OPINION

■ As a reviewing court, we may only reverse this order granting summary judgment if we conclude that a material question of fact exists. (*Department of Revenue v. Heartland Investment* (1985), 106 Ill. 2d 19, 31, 476 N.E.2d 413.) Therefore, we consider all the evidence presented in a light most favorable to Smith, the party opposing entry of summary judgment, and accept as true all reasonable inferences favoring him. *Mount Prospect State Bank v. Forestry Recycling Sawmill* (1980), 93 Ill. App. 3d 448, 451, 417 N.E.2d 621.

■ Section 2—1005(c) of the Code of Civil Procedure provides that summary judgment shall be rendered "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(c).) In a case where the foregoing material constitutes "all of the evidence before the court and upon such evidence there would be nothing left to go to a jury, and the court would be required to direct a verdict," a summary judgment is then proper. (*Scoby v. Vulcan-Hart Corp.* (1989), 188 Ill. App. 3d 89, 544 N.E.2d 106.) But, if the facts of the case allow for more than one conclusion or inference, including one unfavorable to the moving party, the motion for summary judgment should be denied. *West v. Deere & Co.* (1990), 201 Ill. App. 3d 891, 896, 559 N.E.2d 511, 515.

On appeal, Smith presses three basic contentions in asserting that the trial court erred in granting summary judgment. First, Smith argues that, in response to defendant's motion, he provided affirmative evidence from both his expert's affidavit and plaintiff's deposition testimony that the CJ-7 Jeep was in an unreasonably dangerous condition. Second, Smith urges that the court incorrectly applied the case of *Genaust v. Illinois Power Co.* (1976), 62 Ill. 2d 456, 343 N.E.2d 465, in its holding that as a matter of law Smith was presented with an open and obvious danger in driving with his foot on the side step. Third, Smith contends that his conduct goes to the issue of "assumption of risk" and therefore involves consideration only as a damage-reducing factor under a comparative fault analysis. (*Simpson v. General Motors Corp.* (1985), 108 Ill. 2d 146, 483 N.E.2d 1; *Coney v. J.L.G. Industries, Inc.* (1983), 97 Ill. 2d 104, 454 N.E.2d 197.) Ameri-

can Motors, however, maintains on appeal that summary judgment was appropriate because of the insufficient evidence presented to show that the Jeep's design subjected Smith to an unreasonable risk of harm.

Our review of the record reveals that this case primarily concerns a single issue: whether Smith's driving his Jeep with his bare foot outside constituted an open and obvious dangerous condition. To answer this question, we begin our inquiry with an examination of *Genaust*, the seminal decision relied on by the trial court. As in this case, the material facts involved in *Genaust* were undisputed. The plaintiff, while attempting to install a metal tower and antennae close to uninsulated overhead power wires owned and maintained by the defendant, was injured by an electrical current which "arced" from the lines to the antennae. (*Genaust*, 62 Ill. 2d at 459.) Plaintiff subsequently sued the defendant power company and the manufacturers of the tower and antennae in a strict liability action predicated on the theory that the products were unreasonably dangerous due to the failure to have adequate warnings alerting users of the dangers of electrical arcing. Plaintiff admitted that the danger of electricity was a matter of "common knowledge," and after holding that no duty existed where the possibility of injury resulted from a common propensity of a product which is open and obvious, the court further found that the controlling fact is that:

> "[I]t was not reasonably foreseeable a user would install the products in such proximity to electrical wires when the harsh consequences of the slightest mishap, which would cause the metal to contact the wires, are so obvious." *Genaust*, 62 Ill. 2d at 466.

Smith claims that *Genaust* is inapposite to his situation in that (1) he, unlike *Genaust*, did not concede that the danger of the side step was open and obvious, (2) the nature of the products in both situations differs, and (3) unlike *Genaust*, Smith seeks to impose liability upon American Motors due to numerous *design* defects in the Jeep. Plaintiff's distinctions, however, are unpersuasive.

■ Smith has consistently attempted to equate the issue of "open and obvious risk" with the affirmative defense of "assumption of risk." He urges that the extent to which the risk is obvious should simply be a factor in determining damages under a comparative fault analysis. (See *Coney v. J.L.G. Industries, Inc.* (1983), 97 Ill. 2d 104, 454 N.E.2d 197.) We completely disagree. Under *Genaust*, where the risk of injury is open and obvious as a matter of common knowledge and perception, the product cannot be deemed unreasonably danger-

ous or defective in the first instance so as to establish a breach of duty against which any liability could attach. (*Genaust*, 62 Ill. 2d at 466; *Miller v. Dvornik* (1986), 149 Ill. App. 3d 883, 501 N.E.2d 160; *Holocek v. E-Z Just* (1984), 124 Ill. App. 3d 251, 464 N.E.2d 696.) Injuries are not compensable under strict liability if they are caused by those inherent properties of a product which are obvious to all who come into contact with them. (*Renfro v. Allied Industrial Equipment Corp.* (1987), 155 Ill. App. 3d 140, 155, 507 N.E.2d 1213.) Strict liability applies only when the product is dangerous to an extent beyond that which would be contemplated by the ordinary person with the ordinary knowledge common to the community as to its characteristics. (*Renfro*, 155 Ill. App. 3d at 155.) Accordingly, the fact that the plaintiff does not concede any personal awareness of the risk has no bearing in determining whether a danger is open and obvious as a matter of common knowledge and perception.

The much-cited case of *Hunt v. Blasius* (1978), 74 Ill. 2d 203, 384 N.E.2d 368, is directly on point. There, two occupants of a car were killed and three others seriously injured when the car left the paved portion of an interstate highway and collided with the post of an exit sign. A complaint was filed on behalf of the five passengers, alleging that the steel and concrete design of the exit sign post was defective because it was not reasonably safe in the event that automobiles left the paved part of the highway and collided with the post. Plaintiffs in *Hunt* maintained that the post, which was about five feet from the outer edge of the shoulder of the highway, should have been of a "break-away" design to avoid subjecting motorists to an *unreasonable* risk of injury, since collisions with posts supporting exit signs placed within a few feet of the highway were foreseeable. The trial court rejected plaintiffs' theory and granted defendant's motion for summary judgment, and the appellate court affirmed.

In affirming the judgment of both courts, our supreme court recognized:

> "A manufacturer is not under a duty in strict liability to design a product which is totally incapable of injuring those who foreseeably come in contact with the product. Products liability does not make the manufacturer an insurer of all foreseeable accidents which involve its product. Virtually any product is capable of producing injury when put to certain uses or misuses. This is particularly true when injury results from a collision with the product. *** The injuries must derive from a distinct defect in the product, a defect which subjects those exposed to

the product to an *unreasonable* risk of harm." (Emphasis in original.) (*Hunt*, 74 Ill. 2d at 211.)

The criterion effectively used by the court in *Hunt* was the consumer-user contemplation test set forth in section 402A of the Restatement (Second) of Torts. (See Restatement (Second) of Torts §402A, comment *i* (1965).) Under this test, a product's design is defective and unreasonably dangerous when the danger it presents is not obvious to the consumer or user.

This test was highlighted in *Miller v. Dvornik* (1986), 149 Ill. App. 3d 883, 501 N.E.2d 160, where plaintiff, age 19, sued a motorcycle dealer, manufacturer, and driver of an automobile for damages for injuries sustained when a car struck his motorcycle, which was not equipped with crash bars, causing him to be thrown from the cycle. In affirming the trial court's determination that motorcycles without crash bars were not unreasonably dangerous as a matter of law, the *Miller* court relied on the well-established common law definition that an unreasonably dangerous product was one which was "dangerous to an extent beyond that which would be contemplated by the ordinary person with ordinary knowledge common to the community." (*Miller*, 149 Ill. App. 3d at 888.) The court further noted that there was "nothing circumspect about a motorcycle rider's vulnerability to injury in the event of a collision" (*Miller*, 149 Ill. App. 3d at 883-88), and that injuries which were caused by obvious propensities in a product are not compensable. In reaching its decision, the *Miller* court focused on the product itself, not upon the fact that additional safety devices were available, stating that the pivotal question is whether the product itself fails to perform as reasonably expected in light of its nature and intended function. *Miller*, 149 Ill. App. 3d at 888; accord *Bossert v. Tate* (1989), 183 Ill. App. 3d 868, 539 N.E.2d 729.

■ Contrary to the plaintiff's contentions, where the risk is open and obvious, there is no duty to warn. If a product does possess dangerous propensities, the general rule is that a duty to warn arises where there is unequal knowledge with respect to the risk of harm, and the manufacturer, possessed of such knowledge, knows or should know that harm might occur absent a warning. (*Clark v. Penn Versatile Van* (1990), 197 Ill. App. 3d 1, 5, 554 N.E.2d 643, 646.) Since the purpose of a warning is to apprise persons coming into contact with the product of dangers of which they are unaware so as to enable them to take appropriate precautions to protect themselves, it logically follows that warnings serve no purpose and, hence, are not required where the dangers are open and obvious. *Kokoyachuk v. Aero-*

*quip Corp.* (1988), 172 Ill. App. 3d 432, 526 N.E.2d 607; *Hunt,* 74 Ill. 2d at 212.

▮ Smith attempts to predicate American Motors' liability upon the opinion of his expert that certain design features of the Jeep might have "invited" him to extend his foot outside the passenger compartment. However, such an opinion is of no value where the element of risk is open and obvious for all to see. Moreover, Smith, himself, admitted in his deposition that nothing persuaded him that the step was designed as a moving footrest for his left foot.

Plaintiff further asserts in his brief that he saw American Motors' commercials depicting Jeep operators flexing their legs so that their knees were in the door frame while driving. But Smith admitted in his deposition that: (1) the commercial portrayed the driver's feet staying inside the Jeep; and (2) no commercial or advertisement ever demonstrated a car being driven with a driver's foot on the body side step. Nothing in the record therefore substantiates Smith's assertions regarding the actual content of the alleged American Motors' commercial advertisements, and so we are at a loss to review his claim that these commercials could override his "common sense" and thus mask or conceal the obvious risk entailed in placing his foot on a footrest external to the passenger compartment.

In this context, although not urged by the plaintiff, we acknowledge the development of a "representational theory" of products liability. This theory focuses on the *images* of a product that a manufacturer portrays, in particular, the representations of the product's safety for all intended uses, and its effects on consumers. (See Shapo, *A Representational Theory of Consumer Protection: Doctrine, Function & Legal Liability for Product Disappointment,* 60 Va. L. Rev. 1109, 1278 (1974); Note, *Oksenholt v. Lederle Laboratories: The Physician as Consumer,* 79 Nw. U.L. Rev. 460, 463 (1984), (applying representational theory to prescription drugs); *Phelps v. Sherwood Medical Industries* (7th Cir. 1987), 836 F.2d 296 (using theory with medical devices).) In those cases in which a manufacturer explicitly or implicitly represents that its product possesses certain characteristics that it does not actually possess, the representational theory would impose liability on the manufacturer for the resulting injury that reasonable use of the product causes. See Britain, *Product Honesty is the Best Policy: A Comparison of Doctors' & Manufacturers' Duty to Disclose Drug Risks & the Importance of Consumer Expectations in Determining Product Defect,* 79 Nw. U.L. Rev. 342, 348-50 (1984).

The instant case, however, does not provide the appropriate "vehicle" to warrant such an approach. Except for alleged fuzzy recollec-

tions concerning American Motors' advertisements, later admitted by Smith as not making him "really judge it one way or the other" as safe to use the sill as a footrest for his left foot while the vehicle was traveling, the record is insufficient in demonstrating the use of commercials and advertising which would have encouraged Smith to use the step and thus encounter an open and obvious danger of injury.

Moreover, even if the representational theory of product liability had some utility in our analysis of Smith's case, the plaintiff here still could not recover. Smith would have to prove his justifiable reliance on representations that would encourage his misuse of the Jeep's side step, but the perception of the risk incurred when he placed his foot out onto so open and obvious a danger could not have been diminished by the alleged advertisements.

Accordingly, we conclude there was insufficient evidence presented to raise a genuine issue of material fact that the Jeep was unreasonably dangerous and that the trial court properly entered summary judgment in favor of American Motors.

Judgment affirmed.

LORENZ, P.J., and MURRAY, J., concur.