**Randall Howard SPURGEON, Plaintiff,**

v.

**JULIUS BLUM, INC., a foreign corporation, Defendant/Third Party Plaintiff,**

v.

**SUNNYLAND CABINET & MILL WORK, INC., an Illinois Corporation, Third Party Defendant.**

**No. 89–1107.**

United States District Court,
C.D. Illinois,
Peoria Division.

March 22, 1993.

1318

Jack C. Vieley, Peoria, for plaintiff.

Gary M. Peplow, John C. Mulgrew, Jr., & Matthew S. Hefflefinger, Heyl Royster Voelker & Allen, Peoria, for defendant/third party plaintiff.

Paul C. Estes, Peoria, for third party defendant.

**ORDER**

McDADE, District Judge.

The parties have filed cross-motions for summary judgment. For the reasons which follow, Defendant's Motion is **GRANTED in part** and **DENIED in part**. [Doc. # 39–1]. Plaintiff's Motion is **DENIED**.[1] [Doc. # 50–1].

**BACKGROUND**

On April 24, 1989, Plaintiff filed a two count Complaint alleging that Defendant is liable to him under theories of strict liability and negligence for injury to his hand resulting from the defective design of a "door hinging machine," and for failure to warn him that the product, as designed, was unreasonably dangerous when used without a safety shield.[2] The Court has diversity jurisdiction, pursuant to 28 U.S.C. § 1332(a)(1).

**1.** Plaintiff also has filed a Motion for Leave to File a Supplemental Response [Doc. # 48–1] to Defendant's Motion for Summary Judgment. [Doc. # 39–1]. This Motion is GRANTED, but the Court has disregarded the portions of the deposition which are offered for the purpose of showing "subsequent remedial measures" [SRM] as evidence of liability for a design defect (or any other purpose) because Defendant has conceded the prior feasibility of these measures, pursuant to FRE 407. *See Ross v. Black & Decker Inc.,* 977 F.2d 1178 (7th Cir.1992). In *Ross,* the Court held that under FRE 407 "post-manufacture remedial measures are admissible [as SRM] if the manufacturer disputes the feasibility of the remedial measures." *Id.* at 1184–85. The Court allowed evidence of SRM because defendant made

**A. Summary Judgment**

Federal Rule 56(c) Summary Judgment is appropriate when there remains no genuine issue of material fact upon which a reasonable jury could find in favor of the non-moving party, and the moving party is entitled to judgment as a matter of law. Although the moving party on a motion for summary judgment is responsible for demonstrating to the Court why there is no genuine issue of material fact, the non-moving party must go beyond the face of the pleadings, affidavits, depositions, answers to interrogatories, and admissions on file, to show that a rational jury could return a verdict in this party's favor. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–27, 106 S.Ct. 2548, 2552–55, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 254–55, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The Court must view all inferences to be drawn from the facts in the light most favorable to the opposing party. *Anderson,* 477 U.S. at 247–48, 106 S.Ct. at 2509–10. *Beraha v. Baxter Health Corp.,* 956 F.2d 1436, 1440 (7th Cir. 1992). Disputed facts are material when they might affect the outcome of the suit. *First Ind. Bank v. Baker,* 957 F.2d 506, 507–08 (7th Cir.1992). A metaphysical doubt will not suffice. *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1355.

**B. Undisputed Facts**

The following facts are undisputed.[3] On or about August 31, 1988, Plaintiff, Randall

a "tactical trial error by not stipulating to feasibility." *Id.* at 1185.

**2.** On April 22, 1992, Plaintiff amended his Complaint, adding Count III as a claim for punitive damages.

**3.** "Where well alleged facts within an affidavit [or deposition] are not contradicted by counter-affidavit [deposition], they must be taken as true, notwithstanding the existence of contrary averments in the adverse party's pleadings." *Kutner v. DeMassa,* 96 Ill.App.3d 243, 248, 51 Ill.Dec. 723, 727, 421 N.E.2d 231, 235 (1981) *citing Central Clearing, Inc. v. Omega Indus., Inc.,* 42 Ill.App.3d 1025, 1028, 1 Ill.Dec. 570, 573, 356 N.E.3d 852, 855 (1976).

Spurgeon, an employee of Sunnyland Cabinet & Mill Work, Incorporated [Sunnyland], caught his left thumb in the drill of a door hinging machine ["machine"] when he reached "into" and "under" the machine's motor to adjust an air clamp which had come loose during drilling.

### 1. The Machine

The machine was designed and manufactured by Defendant, Julius Blum Incorporated, and shipped to Sunnyland on December 8, 1986. When shipped, the safety shield covering the drill was in place.

The machine performs two functions: it drills holes in a door and inserts a hinge or other mounting hardware. The machine is operated by a control panel which activates the drilling and insertion unit. An operator places the woodstock/door on a working table, which is built on top of the frame. A ruler runs perpendicular to the frame. Stops are positioned on the ruler so that the woodstock can be positioned uniformly for each task.

"The user must position the woodstock underneath the drilling unit and properly align it against the stops positioned on the ruler." Pneumatic hold-down clamps (air clamps) are located on both sides of the frame and are designed to secure the woodstock underneath the drilling unit. To the left of the machine is a "swing arm" and an "insertion ram," designed to mount the hinges into the woodstock.

A clear, plexiglass, safety shield "covers" the drilling unit's router blades. The shield is designed to keep the user's hands out of the drilling area and act as a deterrent to flying wood chips. At the time of the accident, the guard on the machine was longer than the drill bits, so that when an operator put his hand on the bottom of the shield, he would not be able to feel the drill points. The guard (and thus the drill unit) is not flush with the front of the machine, but rather is "recessed in" the machine "about ¼ inch." Although the guard is "clear," Plaintiff admits that it can be seen—although there is some inconsistency on this point.

To use the machine as it was designed, an operator turns the power on and presses a yellow button on the control panel to activate the drilling unit. The drill then moves down toward the woodstock to make holes for the hinge. Once the holes have been drilled into the woodstock, the user is ready to apply hinges. To apply hinges, the operator mounts the insertion ram onto the swing arm and then positions the swing arm horizontally over the drilled holes in the woodstock. To insert the hinge, the swing arm must be rotated down [beneath the drill unit with the drill bits turning above] until it stops. The operator then pushes the yellow button on the control panel which inserts the hinge (mounted on the insertion ram) into the woodstock.

There is no dispute that the safety shield was in place when the machine left the control of Defendant. There is also no dispute that the machine, as designed, was intended to be used with the safety shield in place and was reasonably safe when operated with the shield.

### 2. The Accident

On the day of the accident, Plaintiff dusted off the machine and ran scraps of wood to test the depth of the cut. Plaintiff "assumed" that the safety shield was in place, but never checked to make sure because, he stated, the machine should never be operated without the shield, he never took the shield off, and the only reason for the shield to ever come off the machine was to sharpen the drill bits—which never happened. Nevertheless, the shield was not on the machine. Plaintiff testified that even though he was the only person who used the machine that day, he did not remove the shield, nor did he see it missing. Consequently, when the air clamp swung underneath the drill unit, Plaintiff reached into the machine with his left hand to pull it back into position, and his left thumb was "sucked into" the drill unit, wherein he sustained injuries. The day of the accident was the first time Plaintiff had operated the machine since Dan Golasz quit six months earlier, and no one, to Plaintiff's knowledge, had used the machine during that period.

Plaintiff testified that the accident would not have happened if the shield had been in place, and/or if he had turned off the machine before he put his hand in the drill area. Plaintiff further acknowledged that he knew

the danger associated with use of the machine without the safety shield in place. Plaintiff admits that there may have been one warning on the side of the machine [when it arrived], but could not be sure.

## DISCUSSION

Liability in this case is based on two theories: design defect and failure to warn. Plaintiff contends that Defendant is liable for his injury under theories of strict liability and negligence due to design defect because: (1) the safety shield covering the router blades could be easily removed; (2) there is no safety device within easy reach of the normal operating position of the operator to stop the machine in an emergency;[4] and (3) there were no adequate safeguards or adequate safety shields to prevent the operator from getting his hand and fingers cut by the exposed router blades.[5] Plaintiff contends that Defendant is liable for failure to warn because: (1) there are no written instructions

or warnings of the danger from the exposed router blades; and (2) there are no warnings on the machine of the danger from the exposed router blades.

The Court finds that it must grant summary judgment in favor of Defendant on all Plaintiff's claims except the design defect claim regarding easy removability of the safety shield. There are disputed issues of fact regarding not only whether the shield was easily removable and who removed it, but also whether it was reasonably foreseeable that the shield would be removed because it "hindered" use of the machine, and whether the danger from the absent shield was unreasonable and/or "open and obvious."

### A. Design Defect

In both strict liability[6] and negligence[7] actions, liability will be imposed for design defects when a manufacturer breaches a duty to a product's user.[8] *Malone v. Bic Corp.*, 789 F.Supp. 939 (N.D.Ill.1992); *Baltus*

---

4. The Court **GRANTS** Defendant's Motion for Summary Judgment [Doc. # 39–1] with respect to this claim, as alleged in Count I, paragraph 6D, and Count III, paragraph 6D, because Plaintiff has admitted that the power switch to stop the machine was "within easy reach of the normal operating position of the operator." When asked what it would have taken to shut the machine off before trying to pull the air clamp back, Plaintiff responded: "[r]each forward and turn the switch." Plaintiff's Deposition at 66. Plaintiff's expert suggested that Plaintiff did not turn off the machine, not because the switch was out of reach, but because he was almost done with his work and the machine took time to "coast down." Schoof Deposition at 66.

5. The Court **GRANTS** Defendant's Motion for Summary Judgment on this claim, as alleged at Count I, paragraph 6E; Count II, paragraph 8B; and Count III, Paragraph 6E, because Plaintiff admits that the accident would not have happened if the shield had been in place. This admission is equivalent to stating that the shield was adequate to protect Plaintiff from injury. Plaintiff's Deposition at 45 [although he equivocates at 40]. The old guard did not enclose the drill unit, as required by industry standards, [Schoof Deposition at 59, stating that according to OSHA 1910.212(a)(1) "all points of operation shall be completely enclosed and protected from contact"] however, Schoof also stated that he had no difficulty "with the enclosure itself." *Id.* at 57. Plaintiff further testified that the new guard is open at the bottom, but there are warnings attached, and the guard is more visible because it has a piece of rubber attached to it. Plaintiff's Deposition at 59. Inconsistencies

within a deposition or between depositions which are self-serving will not prevent summary judgment unless counter-affidavits or depositions explaining the inconsistency are submitted. *See Slowiak v. Land O'Lakes*, 987 F.2d 1293 (7th Cir.1993).

6. To recover under a theory of strict liability, Plaintiff must allege and prove that his injuries were (1) proximately caused by a defect in the product; (2) the defect was unreasonably dangerous; and (3) the defect existed when the product left Defendant's control. Generally, this analysis assumes that manufacturer's have a duty to design reasonably safe products and can breach this duty by designing unreasonably dangerous products. Plaintiff must also allege and prove damages. *Suvada v. White Motor Co.*, 32 Ill.2d 612, 210 N.E.2d 182 (1965).

7. The elements of a negligence action are: (1) existence of a duty owed to plaintiff by defendant; (2) a breach of that duty; (3) proof that the breach of that duty proximately caused plaintiff's injuries; and (4) damage to plaintiff as a result of that breach. *Malone v. Bic Corp.*, 789 F.Supp. 939 (N.D.Ill.1992) *citing Ward v. K Mart*, 136 Ill.2d 132, 140, 143 Ill.Dec. 288, 291, 554 N.E.2d 223, 226 (1990).

8. The distinction between strict liability and negligence lies in the fault concept. In strict liability, the focus is on the defective condition of the product at the time it left the defendant's control, rather than the conduct/fault of the defendant. In negligence actions, where defendant's fault is

*v. Weaver Division of Kidde & Co.*, 199 Ill.App.3d 821, 829, 145 Ill.Dec. 810, 815, 557 N.E.2d 580, 585 (1990). Determination of a manufacturer's duty is a question of law. *Cozzi v. North Palos Elementary School Dist.*, 232 Ill.App.3d 379, 383, 173 Ill.Dec. 709, 712, 597 N.E.2d 683, 686 (1st Dist.1992) *citing Genaust v. Illinois Power Co.*, 62 Ill.2d 456, 466, 343 N.E.2d 465, 471 (1976) and *McColgan v. Env. Control Syst., Inc.*, 212 Ill.App.3d 696, 699, 156 Ill.Dec. 835, 837, 571 N.E.2d 815, 817 (1st Dist.1991); *Mason v. Ashland Exploration Inc.*, 965 F.2d 1421, 1425 n. 6 (7th Cir.1992); *Malone v. Bic Corp.*, 789 F.Supp. 939, 942 (1992). Manufacturers have a duty to design reasonably safe products. *Baltus*, 199 Ill.App.3d at 829, 145 Ill.Dec. at 815, 557 N.E.2d at 585; *Malone*, 789 F.Supp. at 942. This duty is breached and liability is imposed under strict liability and negligence when a plaintiff proves that at the time the product left the manufacturer's control the design in question created an unreasonably dangerous condition which proximately caused plaintiff's injury, and this injury was reasonably foreseeable by the manufacturer. *Baltus*, 199 Ill.App.3d at 829, 145 Ill.Dec. at 816, 557 N.E.2d at 586.[9]

### 1. Unreasonable Danger

▉ In both strict liability and negligence actions, the threshold question of unreasonably dangerous design is not whether the product could have been made safer, but whether it is dangerous because it fails to perform in a manner reasonably to be expected in light of its nature and intended function. *McColgan v. Env. Control Syst., Inc.*, 212 Ill.App.3d 696, 699, 156 Ill.Dec. 835,

837, 571 N.E.2d 815, 817 (1st Dist.1991), *Baltus v. Weaver Division of Kidde & Co.*, 199 Ill.App.3d 821, 145 Ill.Dec. 810, 557 N.E.2d 580 (1st Dist.1990). In Illinois, a product is unreasonably dangerous only if one of two standards are satisfied: the product must be dangerous to an extent beyond that contemplated by the ordinary person or the benefits of the challenged design must outweigh the risk of danger inherent in such design. The consumer contemplation test is the traditional standard used to determine whether a product is unreasonably dangerous, but the risk/benefit analysis "is now firmly implanted in Illinois products liability law, and a plaintiff may seek recovery under either theory." *Faucett v. Ingersoll–Rand Mining & Machinery Co.*, 960 F.2d 653, 655 (7th Cir.1992) *citing Lamkin v. Towner*, 138 Ill.2d 510, 527, 150 Ill.Dec. 562, 570, 563 N.E.2d 449, 457 (1990). *See also Malone v. Bic Corp.*, 789 F.Supp. 939 (N.D.Ill.1992).

▉ Plaintiff alleges that the machine was unreasonably dangerous because the safety shield was easily removed and not replaced. There is no dispute that the safety shield was not in place at the time of the accident and that its' absence was a proximate cause of Plaintiff's injury. Thus, it is axiomatic that the machine was dangerous when operated without the shield.

The legal question is whether that danger was unreasonable. Unreasonable danger is measured by one of the two standards set out above. The Court does not reach the question of whether the machine was unreasonably dangerous when used without the safety shield,[10] under either standard, be-

---

at issue, the Court must determine whether defendant deviated from the industry's standard of care, or that defendant knew or should have known the product was unreasonably dangerous, and then failed to warn plaintiff of that condition. *See Davis v. FMC Corp.*, 771 F.2d 224, 230–31, 234 (7th Cir.1985) (illustrating negligence where manufacturer foresaw or should have foreseen that its customers removed guards to modify product and that removal caused injury).

**9.** In Illinois, a plaintiff "must present evidence, such as alternative design which is economical, practical and effective, to the fact finder, who determines whether the complained of condition was an unreasonably dangerous defect." *Kerns v. Engelke*, 76 Ill.2d 154, 162–63, 28 Ill.Dec. 500,

504, 390 N.E.2d 859, 863 (1979); *see also Lolie v. Ohio Brass Co.*, 502 F.2d 741, 744 (7th Cir. 1974), holding that "plaintiff must establish that the product in question has not lived up to the required standard of safety. This of course, requires proof that, *inter alia:* (1) the product as designed is incapable of preventing the injury complained of; (2) there existed an alternative design which would have prevented the injury; (3) in terms of cost, practicality and technological possibility, the alternative design was feasible."

**10.** Although Robert Schoof's opinion was that easy removability of the shield made the machine unreasonably dangerous, Karl Rudisser testified that the machine was not unreasonably dangerous, thus creating a disputed issue of fact.

cause the facts could support a finding that the danger from the missing shield may have been "open and obvious" to the ordinary person.

If, as Defendant contends, the danger from the exposed router blades and missing shield were "open and obvious" to the "ordinary observer" with knowledge common to the community, then Plaintiff's injuries are not compensable, and summary judgment should be granted for Defendant. In Illinois,

> where the risk of injury is open and obvious as a matter of common knowledge and perception, the product cannot be deemed unreasonably dangerous or defective in the first instance so as to establish a breach of duty against which any liability could attach. Injuries are not compensable ... if they are caused by those inherent properties of a product which are obvious to all who come into contact with them.

*Smith v. American Motors Sales Corp.*, 215 Ill.App.3d 951, 955, 159 Ill.Dec. 477, 481, 576 N.E.2d 146, 150 (1st Dist.1991). *See also Mason v. Ashland Exploration, Inc.*, 965 F.2d 1421, 1425 n. 6 (7th Cir.1992). Defendant cannot prevail on this theory for two reasons.

First, the inadequacy of the evidence submitted by the parties creates a dispute of fact concerning whether danger from the missing shield was "open and obvious" to the "ordinary *observer*." [11] Plaintiff testified that the shield was "difficult to see through," but so clear that one could "see right through it." He further testified that the shield was visible if you stood a few feet away from the machine and looked straight at it, or if you looked on a "downward slope" or at an "an-

gle," but if a person stood directly above it, the shield could not be seen because it was positioned "about ¼" inch under the machine's motor. Plaintiff's expert supports this contention.[12] Conversely, Defendant's witness, Dan Golasz, testified that "the shield was right in front of you in there." Defendant's expert approaches the problem by simply concluding that the machine is not unreasonably dangerous, without bothering to tell the Court why he thinks so.[13] Furthermore, the parties' attempt to describe what this machine looks like and how it works is sketchy at best. The xerox photographs are unreasonably dark and the instruction manual is better described as a parts manual.

Second, Defendant's position on this point ignores the fact that Plaintiff's "personal awareness of the risk has no bearing in determining whether a danger is open and obvious as a matter of common knowledge and perception." *E.g., Smith,* 215 Ill.App.3d at 955, 159 Ill.Dec. at 481, 576 N.E.2d at 150.[14] The "open and obvious" doctrine is ruled by an objective standard and applies only when "injuries are caused by those inherent properties of a product which are obvious to all who come in contact with them." *Id.* at 955, 159 Ill.Dec. at 481, 576 N.E.2d at 150.

### 2. Reasonably Foreseeable Use

If a manufacturer's duty were established merely by determining that a product was unreasonably dangerous, the Court would deny summary judgment for both parties based on the disputed issues discussed above. However, liability cannot be imposed on De-

---

Schoof Deposition at 56, 74; November Affidavit of Karl Rudisser at paragraph 25.

**11.** Defendant argues that the Court should adopt an "ordinary user" standard, and cites Comment i to the Restatement (2d) of Torts, § 402A (1965). *See also* November Affidavit of Karl Rudisser, paragraph 25. The Court finds that *Smith* is the controlling law on this issue and thus refuses to adopt Defendant's argument that a subjective user standard should be employed. In fact, the cases Defendant cites to support its argument that the danger was open and obvious actually support the Court's finding. *See generally* Defendant's Motion for Summary Judgment at 7–11.

**12.** Schoof stated, "the guard is a plastic guard that is not highly visible; it does not tell you that

the guard is there or not." Schoof Deposition at 54–55.

**13.** Karl Rudisser's November Affidavit at paragraph 25.

**14.** Defendant appears to confuse elements of "assumption of the risk," an affirmative defense potentially reducing a damage award, with the "open and obvious" doctrine, a defense to recovery. *Id.; see also Faucett v. Ingersoll–Rand Mining & Machinery Co.*, 960 F.2d 653, 654 (7th Cir.1992); *Dukes v. J.I. Case Co.*, 137 Ill.App.3d 562, 91 Ill.Dec. 710, 483 N.E.2d 1345 (1985), *Judgment Aff'd in Part, Rev'd in Part (not relevant here)*, 118 Ill.2d 447, 459, 114 Ill.Dec. 105, 111, 516 N.E.2d 260, 266 (1987).

fendant under either strict liability or negligence, unless the danger created by the shield's "easy removability" is both "unreasonable" and "reasonably foreseeable."

As a matter of law, a manufacturer is liable for all intended use and any reasonably foreseeable misuse of the machine. *Dukes v. J.I. Case Co.*, 137 Ill.App.3d 562, 91 Ill.Dec. 710, 483 N.E.2d 1345 (1985), *Judgment Aff'd in Part, Rev'd in Part (not relevant here)*, 118 Ill.2d 447, 459, 114 Ill.Dec. 105, 111, 516 N.E.2d 260, 266 (1987);[15] *Kerns v. Engelke*, 76 Ill.2d 154, 28 Ill.Dec. 500, 390 N.E.2d 859 (1979). "Foreseeability is that which is objectively reasonable to expect." *E.g., Winnett v. Winnett*, 57 Ill.2d 7, 310 N.E.2d 1 (1974). Generally, where a safety shield is easily removable and hinders use of the product, a jury is entitled to determine whether its removal was reasonably foreseeable. *Foster v. Devilbiss Co.*, 174 Ill.App.3d 359, 124 Ill.Dec. 600, 529 N.E.2d 581 (1st Dist.1988) *citing Consolidated Alum. Corp. v. D.F. Bean Corp.*, 833 F.2d 65, 66–7 (5th Cir.1987); *see also Davis v. FMC Corp*, 771 F.2d 224, 231, 234 (7th Cir. 1985). Conversely, a manufacturer will not be held liable for injury due to an unforeseeable alteration to its product. *Id.* 124 Ill. Dec. at 603, 529 N.E.2d at 584; *see also Woods v. Graham Engineering Corp.*, 183 Ill.App.3d 337, 340, 132 Ill.Dec. 6, 8, 539 N.E.2d 316, 318 (2nd Dist.1989), *citing Augenstine v. Dico Co.*, 135 Ill.App.3d 273, 276, 90 Ill.Dec. 314, 316, 481 N.E.2d 1225, 1227, *app. den.* 111 Ill.2d 553 (1985). For instance, when a safety shield is difficult to remove and cannot be removed by the operator, summary judgment should be granted for the manufacturer because its removal would not be reasonably foreseeable. *Woods v. Graham Engineering Corp.*, 183 Ill.App.3d 337, 132 Ill.Dec. 6, 539 N.E.2d 316 (2nd Dist.1989) *citing Dearmond v. Hoover Ball & Bearing*, 86 Ill.App.3d 1066, 1071, 42 Ill.Dec. 193, 196, 408 N.E.2d 771, 774 (1980) (holding that issue is not whether guards are easily removable, but rather, whether they are easily removable by an operator).

There is no dispute that the machine was operated without the guard on the day of the accident.[16] This "manner" of operation may be characterized as a "misuse" since the parties do not dispute that the machine was intended to be used with the shield in place.[17] Merely alleging the condition permitting misuse, however, is not enough. The particular misuse alleged must also be foreseeable. In *Foster v. Devilbiss Co.*, 174 Ill.App.3d 359, 124 Ill.Dec. 600, 529 N.E.2d 581 (1st Dist. 1988), the appellate court held that a reasonable jury could find it reasonably foreseeable that a guard would be removed, if the presence of the shield "hinder[ed] use of the product." *Id.* at 361, 124 Ill.Dec. at 603, 529 N.E.2d at 584. Plaintiff's poorly drafted Complaint alleges that the *presence* of the shield hindered use of the machine because it slowed down production.[18] The Court has found no evidence to support this theory. In fact, Plaintiff testified that *removal* of the shield actually slowed down the work.[19]

15. In *Dukes*, the appellate court noted that misuse is an affirmative defense if it can be shown that "the product has been used for a *purpose*, neither intended nor foreseeable, not in a *manner* neither intended or foreseeable." *Id.* 137 Ill. App.3d at 580, 91 Ill.Dec. at 723, 483 N.E.2d at 1358. The Illinois Supreme Court affirmed. 118 Ill.2d at 459, 114 Ill.Dec. at 111, 516 N.E.2d at 266. Use of a product in an unforeseeable *manner* is a complete bar to recovery (as opposed to an affirmative defense which may only reduce damages), because Plaintiff cannot prove the manufacturer owes him a duty without evidence that his injury was reasonably foreseeable.

16. There is a dispute as to who removed the safety shield. Plaintiff testified that he never removed the shield, but actually saw Dan Golasz remove it several times. Plaintiff testified that he believed the shield was not on the machine at the time of the accident because Golasz had taken it off and failed to replace it. Plaintiff's Deposition at 38. Dan Golasz denied ever removing the shield, stating that "he had too much respect for machinery to be taking guards or anything off." Golasz Deposition at 16. There also may be a dispute as to whether the shield was easily removable. Plaintiff and his expert testified that the shield could be removed by loosening several screws. Dan Golasz testified for the Defendant that he believed the shield was "permanently mounted" but could not be sure. Gloasz' Deposition at 16.

17. *See supra* note 61 and accompanying text. *See also* Robert Schoof's Deposition at 73–74.

18. Count I, paragraph 6F; Count II, paragraph 8F; Count III, paragraph 6F.

19. Plaintiff's Deposition at 67.

Further, Plaintiff specifically denied that the shield would be removed to "speed up production." [20]

However, the evidence could support a finding, for either party, that the shield was removed because it prevented some operators from doing their best work. For instance, Plaintiff testified that prior to the accident, the guard had been taken off several times by Dan Golasz, the only other employee of Sunnyland to operate the machine. Plaintiff stated that he believed Golasz removed the guard so that he could measure the drilling points by hand, rather than setting the automatic "stops" provided with the machine. Plaintiff said Golasz removed the guard because it was "difficult to look through that clear plastic" and see behind the drill bits to make a precise measurement. Plaintiff's expert, Robert Schoof, agreed.[21] Plaintiff also explained that Golasz' method "takes time"—more time than setting the stops.[22]

The evidence also could support a finding that removal of the safety shield was not reasonably foreseeable. If Plaintiff assumed that the shield was on the machine at the time of the accident because it "would never come off," then, conceivably, a reasonable jury could find that Defendant had this impression as well. Thus, the Court will submit this issue to the jury.

### B. Duty to Warn

■ The "failure to warn" issue can be disposed of quickly. A manufacturer's failure to warn can also make a product unreasonably dangerous if a duty is owed to Plaintiff.

> Generally, a duty to warn exists when there is unequal knowledge and the defendant possessed with such knowledge, knows or should know that harm might occur if no warning is given. The purpose of a warning is to apprise a party of a danger of which he has no knowledge and thereby enable him to take appropriate measures to protect himself. However, when a danger is obvious and generally appreciated, nothing of value is gained by a warning and none is required."

*McColgan v. Env. Control Syst., Inc.,* 212 Ill.App.3d 696, 699, 156 Ill.Dec. 835, 837, 571 N.E.2d 815, 817 (1st Dist.1991); *Collins v. Hyster Co.,* 174 Ill.App.3d 972, 124 Ill.Dec. 483, 529 N.E.2d 303 (3d Dist.1988). Plaintiff alleges that (1) there was no warning on the machine of the danger from the exposed router blade; and (2) no written warnings of the danger from the exposed router blade were supplied with the machine. In this case, Defendant did not have a duty to warn Plaintiff of the danger associated with operating the machine without a safety shield because Plaintiff admitted that this danger was obvious and fully known to him.

### CONCLUSION

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment is **GRANTED** [Doc. # 39–1] with respect to the failure to warn claims in Counts I, II, and III.[23] IT IS FURTHER ORDERED that

---

**20.** Plaintiff's Deposition at 32. The Court will not submit a claim to the jury on a theory of foreseeability which is unsupported by the evidence. Thus, the Court will strike these portions of the Complaint, *sua sponte,* and **GRANT** summary judgment for Defendant on Count I, paragraph 6F; Count II, paragraph 8F; and Count III, paragraph 6F.

**21.** Robert Schoof testified that it was reasonably foreseeable that an operator would remove the shield, even though the machine was designed to set automatic measurements, because this method did not produce the best work. To do the best work, Schoof explained,

> one has to set up the machine to a precise line, to a very precise dimension [and] you can see best and do your best work by having the guard removed. But where one is working to very precise dimensions, looking through a

curved plexiglass surface is just looking through a mirror darkly. [Schoof Deposition at 71–72].

Defendant also admits that alternatives in the safety shield's design and color were feasible prior to the accident. *See* Motion To Strike [Doc. # 42–1]. That evidence is relevant to prove Plaintiff's case.

**22.** Plaintiff's Deposition at 67. This testimony does not support the allegation made in his Complaint, namely, that Defendant could reasonably foresee that the guard would be removed to "speed up production of the hinging machine while being operated by Plaintiff."

**23.** Specifically, Summary Judgment is **GRANTED** on Count I with respect to paragraphs 6B and C; Count II, paragraph 8C; and Count III, paragraphs 6 B, C, H, I, and 10.

Defendant's Motion for Summary Judgment [Doc. # 39–1] is **DENIED in part** with respect to the design defect claims in Counts I, II, and III [24] **with two exceptions:** Defendant's Motion for Summary Judgment [Doc. # 39–1] is **GRANTED in part** with respect to Count I, paragraphs 6D and 6E; Count II, paragraph 8B; and Count III, paragraphs 6D, and 6E. IT IS FURTHER ORDERED that Plaintiff's Motion for Summary Judgment [Doc. # 50–1] is **DENIED.** This case is **REFERRED TO THE MAGISTRATE** for further proceedings and a final pretrial conference.

24. Specifically, Summary Judgment is **DENIED** (for both parties) with respect to Counts I, paragraphs 1–5, 6A, 6F, 7, 8, and 9; Count II, paragraphs 1–7, 8A, D, E, and 9; Count III, paragraphs 1–5, 6A, F, G, 7, .8, 9, 10.