Linnea BAXTER, Plaintiffs,

v.

WELDOTRON CORPORATION, Cincinnati Fan & Ventilator Company, Inc.; Marathon Electric; and Does I through VI, inclusive, Defendants.

WELDOTRON CORPORATION, Cincinnati Fan & Ventilator Company, Inc.; Marathon Electric Manufacturing Corporation, Third Party Plaintiffs,

v.

MOORE BUSINESS FORMS, INC., a Delaware corporation, Third Party Defendants.

No. 92–NC–0058–S.

United States District Court, D. Utah, N.D.

Dec. 9, 1993.

Robert F. Orton, Marsden, Orton, Cahoon & Gottfredson, Salt Lake City, UT, for plaintiffs.

Michael W. Homer, Stephen G. Morgan, Robert R. Wallace, Hanson, Epperson & Smith, Russell G. Workman, Christensen, Jensen & Powell, Salt Lake City, UT, for defendants.

## MEMORANDUM DECISION

SAM, District Judge.

This matter is before the court on defendant Cincinnati Fan's motion for summary Judgment. The court has received and reviewed the parties' briefs, including the supplemental briefs requested by the court and, pursuant to D. Ut. 202(d), the motion will be determined by the court on the basis of the written memoranda of the parties without the assistance of oral argument.

### I. Brief Factual Summary

The plaintiff was injured when she allegedly placed her hand in an opening of a bindery and wrapping machine designed and manufactured by defendant Weldotron Corp. Inside the opening was a rotating fan manufactured and supplied to Weldotron by defendant Cincinnati Fan. The motor powering the fan was manufactured by yet another defendant.

Cincinnati's statement of facts, which are essentially undisputed (except for paragraphs 2, 3, 9 and 10), describe a situation where

defendant Weldotron ordered several hundred fans from Cincinnati Fan. The fans were manufactured and delivered based upon the specifications and instructions of Weldotron. Weldotron then put the fans into its bindery and wrapping machine, which it designed and manufactured. Thus, the fans supplied by Cincinnati Fan, which allegedly injured the plaintiff, were "component parts" of Weldotron's machine.

## II. Legal Arguments

### A. Fed.R.Civ.P. 56 Standards for Summary Judgment

Under Fed.R.Civ.P. 56, summary judgment is proper only when the pleadings, affidavits, depositions or admissions establish there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. The burden of establishing the nonexistence of a genuine issue of material fact is on the moving party.[1] *E.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This burden has two distinct components: an initial burden of production on the moving party, which burden when satisfied shifts to the nonmoving party, and an ultimate burden of persuasion, which always remains on the moving party. *See* 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2727 (2d ed. 1983).

When summary judgment is sought, the movant bears the initial responsibility of informing the court of the basis for his motion and identifying those portions of the record and affidavits, if any, he believes demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552. In a case where a party moves for summary judgment on an issue on which he would not bear the burden of persuasion at trial, his initial burden of production may be satisfied by showing the court there is an absence of evidence in the record to support the nonmovant's case.[2] *Id.,* 477 U.S. at 323, 106 S.Ct. at 2552. "[T]here can be no issue as to any material fact ... [when] a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*

Once the moving party has met this initial burden of production, the burden shifts to the nonmoving party to designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553.

If the defendant in a run-of-the-mill civil case moves for summary judgment ... based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakenly favors one side or the other, but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict....

---

1. Whether a fact is material is determined by looking to relevant substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

2. In his dissent in *Celotex,* Justice Brennan discussed the mechanics for discharging the initial burden of production when the moving party seeks summary judgment on the ground the nonmoving party—who will bear the burden of persuasion at trial—has no evidence:

Plainly, a conclusory assertion that the nonmoving party has no evidence is insufficient. Such a 'burden' of production is no burden at all and would simply permit summary judgment procedure to be converted into a tool for harassment. Rather, as the Court confirms, a party who moves for summary judgment on the ground that the nonmoving party has no evidence must affirmatively show the absence of evidence in the record. This may require the moving party to depose the nonmoving party's witnesses or to establish the inadequacy of documentary evidence. If there is literally no evidence in the record, the moving party may demonstrate this by reviewing for the court the admissions, interrogatories and other exchanges between the parties that are in the record. Either way, however, the moving party must affirmatively demonstrate that there is no evidence in the record to support a judgment for the nonmoving party.

477 U.S. at 323, 106 S.Ct. at 2552 (citations omitted).

*Liberty Lobby,* 477 U.S. at 252, 106 S.Ct. at 2512. The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* If the nonmoving party cannot muster sufficient evidence to make out a triable issue of fact on his claim, a trial would be useless and the moving party is entitled to summary judgment as a matter of law. *Id.,* 477 U.S. 242, 106 S.Ct. 2505.

### B. Parties' Legal Arguments

■ Cincinnati Fan moves for summary judgment based on the legal proposition that "if the component part manufacturer does not take part in the design or assembly of the final system or product, he is not liable for defects in the final product if the component part is not defective." *Koonce v. Quaker Safety Products & Mfg.,* 798 F.2d 700, 715 (5th Cir.1986). Many cases with facts similar to those in the present situation were cited by Cincinnati Fan to support this rule of law. *See Davis v. Dresser Industries,* 800 S.W.2d 369 (Tex.App.1990) ("Under Texas law, strict liability for component part manufacturers is limited when the component part is integrated into a larger unit before distribution.... If the component part manufacturer does not take part in the design or assembly of the final system or product, he is not liable for defects in the final product if the component part itself is not defective."). *See also Woods v. Graham Engineering Co.,* 183 Ill.App.3d 337, 132 Ill.Dec. 6, 539 N.E.2d 316 (1989) ("[T]he import of all design cases is that the manufacturer is to be held liable only when it is the manufacturer that is responsible for the design of the final product or the component part of the product that caused the injury".); *Kokoyachuk v. Aeroquip Corp.,* 172 Ill.App.3d 432, 122 Ill.Dec. 348, 526 N.E.2d 607 (1988) ("In the present case, it is important to note that the plaintiff does not contend that the refrigeration unit malfunctioned in any way. Rather, he contends that because it was foreseeable that the unit may be used to cool a trailer hauling ice cream, the availability of safety devices which may have decreased the formation of ice within the trailer created a question of fact as to whether the unit was unreasonably danger-

ous.... At the time the trailer was being assembled, it was no longer within the control of the defendant and there is nothing in the record to indicate that Thermo King had authority to instruct the manufacturer of the trailer as to its assembly.").

In addition, Cincinnati Fan makes the argument that it cannot be held liable because it merely manufactured the fans according to Weldotron's specifications. The rule of law in this area, as stated by the Utah Supreme Court, is that:

> A builder or contractor is justified in relying upon the plans and specifications which he has contracted to follow, unless they are so apparently defective that an ordinary builder of ordinary prudence would be put upon notice that the work was dangerous and likely to cause injury.

*Leininger v. Stearns–Roger Manufacturing Co.,* 17 Utah 2d 37, 404 P.2d 33 (1965). *See also Huff v. Ford Motor Co.,* 127 Mich.App. 287, 338 N.W.2d 387 (1983) ("[The] contractor is not liable if he has merely carried out carefully the plans, specifications and directions given him, since in that case the responsibility is assumed by the employer, at least where the plans are not so obviously defective an [sic] dangerous that no reasonable man would follow them."); *Spangler v. Kranco, Inc.,* 481 F.2d 373, 375 (4th Cir.1973) ("We find additional support for the action of the district judge in the principle that the products liability rule holding a manufacturer liable does not apply where the product has been manufactured in accordance with the plans and specifications of the purchaser except when such plans are so obviously dangerous that they should not reasonably be followed.").

The only viable defenses offered by plaintiff to the motion for summary judgment are that Cincinnati Fan neglected to provide evidence, by affidavit or otherwise, that (1) under the first defense, Cincinnati Fan's "component part" was not defective, and (2) under the second defense, the plans and specifications supplied by Weldotron were not "obviously dangerous or apparently defective" and Cincinnati Fan had no reason to be on notice that the product was dangerous or likely to cause injury. Although plaintiff highlights

other supposedly disputed facts (phrased in question format and difficult to follow), her arguments are supported only by the affidavits of Kenneth Lawrence Devries, Ph.D., an "expert" engineer. His affidavits are full of inconclusive statements, pose questions rather than state facts, make excuses for not having relevant information and are overall insufficient to support plaintiff's opposition or contradict Cincinnati's supported statements of fact.

For example, plaintiff contends there is a dispute involving the information possessed by Cincinnati Fan regarding the use to which the fans would be put and/or the type of machine into which the fans would be inserted. However, Cincinnati Fan's affidavits clear up any question raised by plaintiff.

Other supposed questions of disputed fact raised by plaintiff are simply not material, or are addressed in Cincinnati Fan's affidavits. The only potentially material questions raised by plaintiff involve paragraphs 1, 3 and 4 of her opposing memorandum. They involve questions concerning the condition of the fan at the time it was supplied by Cincinnati Fan to Weldotron, and questions regarding the specifications supplied by Weldotron to Cincinnati, and whether they were "obviously defective" such as to put Cincinnati on notice. Plaintiff and defendant were given additional opportunity to address these two critical areas in supplemental briefing and additional expert affidavits. Plaintiff's submissions did nothing more to support her bare allegations and defendant presented additional evidence to support its position that it supplied non-defective component parts which were manufactured according to the plans and specifications supplied by Weldotron. Accordingly, as Rule 56(e) provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denial of the adverse party's pleading, *but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.* If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e) (emphasis added).

A third defense raised by Cincinnati Fan involves the warning label affixed to its fans at the time of manufacture. Cincinnati Fan presented evidence that the label was in place and visible when the machine which allegedly caused plaintiff's injury was inspected after the incident. Plaintiff's only response to Cincinnati's argument is that she didn't see the warning label at the time of the accident and didn't recall seeing it during the six years she worked there. The fact that this individual plaintiff didn't see it is not an adequate defense. Cincinnati Fan presented uncontroverted evidence of the existence and contents of the warning label and plaintiff's response is insufficient.

Plaintiff also made a Rule 56(f) motion that she has not completed discovery and needs more time to come up with evidence to defend the motion for summary judgment. However, Cincinnati Fan makes persuasive arguments, supported by Tenth Circuit case law, that since plaintiff has done little discovery in approximately a year and a half and has been dilatory, she should not now be allowed to her use own lack of effort as a defense to a proper and timely motion for summary judgment. *See Jensen v. Redevelopment Agency of Sandy City,* 998 F.2d 1550 (10th Cir.1993) (this court notes the Tenth Circuit advisory that this opinion has no precedential value and should not be cited by any court within the circuit. Accordingly, this court refers to the case for illustrative purposes only.). The court agrees with Cincinnati Fan on this point. Plaintiff provided no excuses for not having conducted adequate discovery other than to say the discovery cut-off deadline was just extended by order of the court on July 22, 1993. However, that has no bearing on whether she has been dilatory since filing the complaint. Summary judgment motions do not have to wait until discovery is closed. Accordingly, the court denies plaintiff's Rule 56(f) motion.

III. Conclusion

Cincinnati Fan has carried its burden, as that burden was explained in the court's

recitation of the Fed.R.Civ.P. 56 summary judgment standard. Plaintiff failed to prove that either Cincinnati Fan's product was defective, in and of itself, or that the plans and specifications upon which Cincinnati Fan relied were obviously dangerous or defective. This court must therefore ask itself "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Liberty Lobby,* 477 U.S. at 252, 106 S.Ct. at 2512. The answer is no. Plaintiff has done no more than present speculative evidence in an attempt to create "some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538. Plaintiff's presentation is insufficient and a trial would be useless.

Accordingly, Cincinnati Fan is entitled to summary judgment as a matter of law.

So Ordered.