FOURTH DIVISION
 September 30, 1996

No. 1-95-2394

VERA DAVIS, Special Administrator of )
the Estate of CALVIN DAVIS, Deceased, )
 )
 Plaintiff-Appellant, ) Appeal from
 ) the Circuit Court
 v. ) of Cook County.
 )
PAK-MOR MANUFACTURING COMPANY, a )
Corporation; DANIEL KRALL & CO., INC., )
a Corporation; NAVISTAR INTERNATIONAL )
TRANSPORTATION CORPORATION, a ) No. 92-L-2598
Corporation, ) 
 )
 Defendants-Appellees, )
 )
 and ) Honorable
 ) Jennifer Duncan-Brice,
ZOELLER WASTE SYSTEMS and S & S WELDING ) Judge Presiding.
& FABRICATION, INC., )
 )
 Defendants. )

 JUSTICE THEIS delivered the opinion of the court:

 The plaintiff, Vera Davis, brought this wrongful death action on
behalf of her husband, Calvin Davis, based on a strict product
liability theory. On May 31, 1991, Calvin, a garbage collector for
the Village of Skokie, had been operating a garbage-packing device
located at the rear of his truck, when the truck began to move. As
Calvin ran to the front of the truck and attempted to enter the cab,
he fell. The truck ran over him, causing fatal injuries. Following
the accident, the plaintiff brought an action against several
defendants, including (1) Navistar International Transportation
Corporation ("Navistar"), the manufacturer of the truck's cab and
chassis, (2) Pak-Mor Manufacturing Company ("Pak-Mor"), the
manufacturer of the packing device which was added to the chassis to
transform it into a garbage truck, and (3) Daniel Krall & Co., Inc.
("Krall"), the company which sold the packing device to the Village of
Skokie and installed it onto the chassis. The plaintiff maintained
that the garbage truck, including its packing control switch,
constituted an unreasonably dangerous product. It was undisputed that
the switch wiring of the truck had been altered to permit the
operation of the packing device with the truck in gear. The plaintiff
argued that the defendants had a duty to guard against the alteration
of the switch wiring. Pak-Mor and Krall filed motions for summary
judgment, arguing that they could not have foreseen the alteration of
the switch wiring. Navistar also filed a motion for summary judgment
on the grounds that the alleged dangerous condition involved systems
incorporated onto the cab and chassis after they left Navistar's
control. The trial court granted summary judgment in favor of all
three defendants. The plaintiff now appeals. Upon review, we
conclude that a genuine issue of material fact exists as to whether a
garbage truck operator easily could alter the truck's switch wiring
and whether an incentive to alter the switch exists within the garbage
collection industry. For the reasons which follow, we affirm summary
judgment in favor of Navistar, and reverse the trial court's judgment
as to Pak-Mor and Krall.
 On appeal, several facts are undisputed. The cab and chassis
supplied by Navistar had a neutral safety switch which was designed to
prevent the truck's engine from being started with the transmission in
gear. The packer body supplied by Pak-Mor contained a packer control
switch which Krall installed on the chassis by wiring it to the
neutral safety switch. If properly wired, the garbage-packing device
is operable only if the transmission is in neutral. Ideally, a
garbage truck operator should place the truck in neutral and set the
parking brake before exiting the cab to collect and pack garbage. 
 In this case, a post-accident inspection of the truck revealed
that the wires connecting the packer control switch to the neutral
safety switch had been altered to permit the operation of the packing
device with the truck in gear. The record contains a diagram showing
the manner in which the packer control switch was rewired to bypass
the safety feature. The diagram shows that the switch consisted of
six wires attached to six terminals. Whoever altered the switch
merely moved a wire from one terminal to another. Thus far, the
identity of the individual who altered the wiring is unknown. The
parties do not dispute that the truck was wired properly when it left
the defendants' control.
 Pak-Mor and Krall moved for summary judgment on the grounds that
they had no duty to construct a foolproof garbage truck to prevent the
alteration of the packing device after it left their control. In
response, the plaintiff contended that the miswiring of the packing
control switch was reasonably foreseeable. In support of her
argument, the plaintiff offered the affidavit of Daniel Pacheco, an
expert in engineering. Pacheco's affidavit stated that, in the waste
disposal industry, truck operators have an incentive to alter the
wiring of the neutral start switch/control switch to allow for
"[p]acking on the run." This procedure enables the truck operators to
pack garbage while the truck is in gear, resulting in faster
completion of their work. Pacheco stated that engineers in the
industry were aware of this phenomenon and devised the neutral start
switch in order to prevent packing on the run. 
 Pacheco further indicated that the switch in question failed to
meet industry standards because it easily could be overcome by simple
rewiring. Pacheco concluded that the truck design presented an
unreasonably dangerous condition "in that it failed to incorporate an
electrical system design that could not be readily overridden to allow
the operation of the PAK-MOR packer while the vehicle was in gear." 
Moreover, Pacheco concluded that the improper wiring could have been
prevented if permanently wired connectors were used in the truck. 
 In ruling on the motion for summary judgment, the trial court
found Pacheco's affidavit insufficient because it did not state
expressly that the modification of the switch can be accomplished by
someone who does not possess special, expert knowledge. The trial
court determined that there was no evidence that the modification of
the wiring easily could have been accomplished by a garbage truck
operator. The court concluded that Krall and Pak-Mor could not have
foreseen that the safety switch would have been altered, and granted
the motion for summary judgment. Likewise, the court granted
Navistar's motion for summary judgment.
 Initially, we address Navistar's status on appeal. Based on the
record and briefs before us, we determine that the plaintiff has
waived appellate review of summary judgment as to Navistar. Supreme
Court Rule 341(e) requires an appellant to advance specific
contentions, supported by a discussion of the relevant facts and law. 
155 Ill. 2d R. 341(e). In her briefs, the plaintiff merely makes
passing reference to Navistar. Therefore, she has waived review of
the trial court's ruling.
 Nonetheless, the plaintiff cannot show that Navistar had a duty
to anticipate that the chassis could become unreasonably dangerous
after it left Navistar's control. See Depre v. Power Climber, Inc.,
263 Ill. App. 3d 116, 635 N.E.2d 542 (1994). The record shows that
Navistar only knew that its chassis could serve any number of uses. 
When the chassis left Navistar's control, the packer control switch
had not yet been attached. At oral argument, the plaintiff conceded
that there was no evidence that Navistar knew that the chassis would
be used as a part of a garbage truck. Therefore, we affirm the trial
court's order granting summary judgment in favor of Navistar.
 We next consider the trial court's decision to grant summary
judgment in favor of Pak-Mor and Krall. Before reaching the merits of
this issue, we take the opportunity to clarify a matter in the record. 
The plaintiff's notice of appeal, dated July 7, 1995, states that she
appeals from the trial court's June 12, 1995, order. The June 12
order granted Navistar's motion for summary judgment and included
finality language with respect to an order dated May 31, 1995. Based
on the record before us, we determine that the notice of appeal
specifying the June 12 order necessarily entails an appeal from the
May 31 order. We note that the May 31 order (1) denied the
plaintiff's motion for reconsideration, (2) granted Pak-Mor's and
Krall's amended motion for summary judgment, and (3) continued the
case for a hearing on Navistar's motion for summary judgment. In her
motion for reconsideration, the plaintiff asked the court to
reconsider its earlier summary judgment ruling in light of the amended
expert affidavit of Daniel Pacheco. On appeal, the defendants argue
the inferences that may or may not be drawn from Pacheco's affidavit. 
Also, the defendants filed an "Amended Motion for Summary Judgment"
which expressly addresses the assertions contained in the amended
expert affidavit. In ruling on the so-called "Motion for
Reconsideration," the trial court considered the affidavit. 
Therefore, based on the record and arguments of the parties on appeal,
we determine that the amended expert affidavit of Daniel Pacheco is
properly before us, and that we may review it de novo. Outboard
Marine Corp. v. Liberty Mutual Insurance Co., 154 Ill. 2d 90, 607
N.E.2d 1204 (1992).
 Turning to the plaintiff's contentions, she first argues that a
genuine issue of material fact remains regarding the ease with which a
garbage truck operator could alter the switch wiring on the truck,
thereby rendering it an unreasonably dangerous product. The plaintiff
directs us to review the expert affidavit of Daniel Pacheco. She
argues that the defendants knew or should have known that, at the time
of the decedent's injury, truck operators had an incentive to alter a
garbage truck's switch wiring. She also argues that this incentive
was recognized in the garbage collection industry.
 In response, Pak-Mor and Krall argue that the modification of the
neutral safety switch was not reasonably foreseeable as a matter of
law. At oral argument, they contended that the modification requires
expertise not possessed by an average garbage truck operator. The
defendants maintain that a garbage truck operator would be incapable
of altering the neutral safety switch to allow the packer body to
function with the transmission in gear. They further argue that the
only reasonable inference from the affidavit of Daniel Pacheco is that
the modification of the switch may be accomplished by someone with
specialized knowledge of electronics. As such, they urge us to affirm
the trial court. 
 We review the trial court's decision to grant summary judgment,
as well as all of the evidence contained in the record, de novo. 
Outboard Marine Corp. v. Liberty Mutual Insurance Co., 154 Ill. 2d 90,
607 N.E.2d 1204 (1992). We must review the affidavits, depositions,
admissions, exhibits and pleadings on file, construing them strictly
against the movants, Pak-Mor and Krall, and liberally in favor of the
nonmoving plaintiff. Outboard, 154 Ill. 2d at 131-32, 607 N.E.2d at
1223. 
 Summary judgment is proper when there is no genuine issue of
material fact and the moving party's right to judgment is free from
doubt. In re Estate of Albergo, 275 Ill. App. 3d 439, 656 N.E.2d 97
(1995). Because summary judgment is a drastic measure (Purtill v.
Hess, 111 Ill. 2d 229, 489 N.E.2d 867 (1986)), where reasonable
persons could draw different inferences from the undisputed facts,
summary judgment should be denied. Albergo, 275 Ill. App. 3d at 445,
656 N.E.2d at 103. 
 Where an unreasonably dangerous condition is caused by a 
modification to the product after it leaves the manufacturer's
control, the manufacturer is not liable unless the modification was
reasonably foreseeable. Woods v. Graham Engineering Corp., 183 Ill.
App. 3d 337, 341, 539 N.E.2d 316, 318 (1989); see generally Palmer v.
Avco Distributing Corp., 82 Ill. 2d 211, 412 N.E.2d 959 (1980). 
Foreseeability means "that which it is objectively reasonable to
expect, not merely what might conceivably occur." (Emphasis in
original.) Winnett v. Winnett, 57 Ill. 2d 7, 12-13, 310 N.E.2d 1, 5
(1974).
 If a product is capable of easily being modified by its operator,
and if the operator has a known incentive to effect the modification,
then it is objectively reasonable for a manufacturer to anticipate the
modification. See Spurgeon v. Julius Blum, Inc., 816 F. Supp. 1317
(C.D. Ill. 1993); Wiedemann v. Industrial Erectors, Inc., 137 Ill.
App. 3d 47, 483 N.E.2d 990 (1985). Conversely, if the alteration of
the product requires special expertise, or otherwise is not
accomplished easily, then it is not objectively reasonable for a
defendant to foresee the modification. Woods, 183 Ill. App. 3d at
342, 539 N.E.2d at 319; DeArmond v. Hoover Ball & Bearing, Uniloy
Div., 86 Ill. App. 3d 1066, 408 N.E.2d 771 (1980).
 In support of their argument that the alteration of the switch
wiring in this case was not reasonably foreseeable, the defendants
rely on several cases where the court determined that the manufacturer
could not reasonably foresee the physical alteration of the product. 
See Woods, 183 Ill. App. 3d 337, 341, 539 N.E.2d 316, 318-19;
Augenstine v. Dico Co., 135 Ill. App. 3d 273, 481 N.E.2d 1225 (1985);
Gasdiel v. Federal Press Co., 78 Ill. App. 3d 222, 396 N.E.2d 1241
(1979); Coleman v. Verson Allsteel Press Co., 64 Ill. App. 3d 974, 382
N.E.2d 36 (1978). The facts in the foregoing cases differ materially
from the facts presented here. In each of these cases, the evidence
showed that the modifications only could be accomplished with
technical expertise, beyond that possessed by the average machine
operator. In each case, the court determined that substantial changes
had been made to the products in question. Additionally, nothing in
the cases suggests that the plaintiff presented evidence of the ease
with which the product could be altered, or the incentive to do so.
 In contrast, in the present case, the plaintiff has offered the
affidavit of her engineering expert, Daniel Pacheco. Because we are
required to construe all reasonable inferences in Pacheco's affidavit
in the light most favorable to the plaintiff, we find that a genuine
issue of material fact remains. Specifically, there is an issue of
material fact as to whether the defendants could foresee that a
garbage truck operator easily could rewire the packing control switch
in order to pack on the run. The defendants failed to present
evidence that the rewiring of the switch is a complex procedure or
that an average garbage truck operator would not have the knowledge
necessary to accomplish the modification. The affidavit of Pacheco
invites an inference that the alteration of a garbage truck's switch
wiring may be effected with ease, in less than five minutes, using 
pliers and a screwdriver. 
 Furthermore, the plaintiff's expert affidavit suggests that truck
operators have an incentive to alter their trucks in a manner which
permits them to dispose of garbage in a more efficient manner, by
operating the packing device while the truck is in gear. This fact is
supported by the deposition testimony of Paul Brzozowski, an employee
for the Village of Skokie. Brzozowski confirmed the existence of the 
industry-wide phenomena known as packing on the run. Thus, we find
that the plaintiff has presented evidence sufficient to show that a
question exists as to whether garbage truck operators have an
incentive to alter the packing control switch in order to complete
their work more quickly. Upon reviewing the record and the arguments
of the parties on appeal, we conclude that the trial court prematurely
granted summary judgment in favor of Pak-Mor and Krall. We affirm the
trial court's judgment as to Navistar, and reverse and remand this
case for further proceedings as to Pak-Mor and Krall.
 Reversed and remanded.
 HOFFMAN, P.J., concurs.
 CAHILL, J., dissents.

JUSTICE CAHILL, dissenting:
 I respectfully dissent. The majority writes: "The defendants
failed to present evidence that the rewiring of the switch is a
complex procedure or that an average garbage truck operator would not
have the knowledge to accomplish the procedure." Here from the record
is a drawing of the circuitry that prevented the defendant's product
from working unless the truck to which it was attached was in neutral
gear:

 The record also includes the same drawing with penciled notations
in an unknown hand. That drawing was in the possession of the Village
of Skokie. The evidence established that the penciled notations, if
followed, would enable one so disposed to alter the circuitry to by-
pass the safety feature of the product. The record is silent on who
re-wired the device, and devoid of evidence that could create an
inference that it was the act of the deceased operator. Only
speculation remains, and the possibility that the rewiring was the act
of an industrial saboteur is as rational a fancy as a sanitation
worker with a degree in electrical engineering.
 As the trial court pointed out, the affidavit of the plaintiff's
expert established nothing more than that the wiring represented by
the drawing was easily accessible within the cab of the truck and that
the affiant, familiar with electrical wiring, could do the deed in
five minutes. It says nothing about the skill or expertise required
once access takes place. We here twist the rule that a manufacturer
is not absolved of liability if he can reasonably foresee that his
product can be easily modified by the operator to defeat a safety
feature, and make a jury question of whether or not the average
sanitation worker can decipher a wiring diagram for an electronic
device. Reasonably foreseeable means that which is objectively
reasonable to expect, not that which might conceivably occur. Winnett
v. Winnett, 57 Ill. 2d 7, 13, 310 N.E.2d 1 (1974).
 The trial court ruling got to the nub of this case: an affidavit of an expert that he could decipher the wiring diagram and
easily modify the device is irrelevant when the test is whether or not
the device is easily modified by the operator. That is my
understanding of the law in Illinois. DeArmond v. Hoover Ball and
Bearing, 86 Ill. App. 3d 1066, 408 N.E.2d 771 (1980); Woods v. Graham
Engineering Corp., 183 Ill. App. 3d 337, 539 N.E.2d 316 (1989);
Coleman v. Verson Allsteel Press Co., 64 Ill. App. 3d 974, 382 N.E.2d
36 (1978).
 The trial court found that the affidavit of the plaintiff's
expert confused easy access with easy modification. I agree, and
would affirm.