**CLANCY SYSTEMS INTERNATIONAL, INC., Plaintiff,**

v.

**SYMBOL TECHNOLOGIES, INC., Defendant.**

Civil Action No. 95–B–2851.

United States District Court, D. Colorado.

Feb. 18, 1997.

A.M. Demirali, Demirali & Associates, P.C., Denver, CO, for Plaintiff.

Gregg I. Anderson, Holland & Hart, Denver, CO, Arnold Sprung, Nathaniel D. Kramer, Ira J. Schaefer, Sprung Horn Kramer & Woods, Tarrytown, NY, for Defendant.

## MEMORANDUM OPINION & ORDER

BABCOCK, District Judge.

Plaintiff, Clancy Systems International, Inc. (Clancy), asserts claims for damages arising from defendant's alleged infringement of United States Patents 4,005,388 and 4,007,443. Defendant, Symbol Technologies, Inc. (Symbol) moves for summary judgment on all claims for failure to comply with the marking requirements of 35 U.S.C. § 287. For the following reasons, I will grant Symbol's motion.

### I.

The following facts are undisputed or, if disputed, are viewed most favorably to Clancy. Clancy owns United States Patents 4,005,388, issued on February January 25, 1977, and 4,007,443, issued on February 8, 1977. The patents were issued initially to Termiflex, Inc., of Nashua, New Hampshire, but they were assigned to Clancy on April 25, 1991. Termiflex retained a license under each patent, and has produced and sold products under the patents. Clancy has proffered no evidence regarding whether Termiflex marked its products with the appropriate patent numbers. Both patents expired on their respective anniversary dates in 1994.

After the assignment, Clancy utilized the patented technology in certain hand-held terminals it was attempting to manufacture and sell. Wolfson Aff. ¶ 3. Specifically, Clancy modified several existing devices to include a side-mounted shift key. Id. Only four or five such devices were made, however, and none were ever sold or offered for sale. Id. at ¶¶ 3–4. Each such device was marked with the word "patents" along with the patent numbers. Id. at ¶ 3.

In March 1992, Clancy discovered that a Japanese manufacturer, Nippondenso Co., had been making and selling a product, the "BHT 2061," that arguably infringed the patents. Id. at ¶ 6. After negotiations between the parties, Clancy agreed to license Nippondenso to sell the BHT 2061 in the United States. Id.

After the license agreement took effect on April 27, 1992, and through the expiration of both patents in early 1994, Nippondenso continued to sell the BHT 2061 in commercial quantities in the United States. Nishimura Decl. ¶ 4. Neither the BHT 2061 nor any wrapping or packaging for the BHT 2061 was marked with the word "patents" or the relevant patent numbers. Id. at ¶ 5. Clancy has presented no evidence of its efforts to force Nippondenso to mark the BHT 2061 with the patent numbers.

### II.

The very purpose of a summary judgment motion is to assess whether trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir.1995). Fed.R.Civ.P. 56 provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The nonmoving party has the burden of showing that there are issues of material fact to be determined. *Celotex Corp. v. Ca-*

*trett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, that it believes demonstrate the absence of genuine issues for trial. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53; *Mares v. ConAgra Poultry Co., Inc.,* 971 F.2d 492, 494 (10th Cir.1992). Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. *Otteson v. U.S.,* 622 F.2d 516, 519 (10th Cir.1980); Fed.R.Civ.P. 56(e). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the pleadings themselves." *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553.

If a reasonable juror could not return a verdict for the nonmoving party, summary judgment is proper and there is no need for a trial. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553. When the moving party is the defendant, the operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). However, summary judgment should not enter if, viewing the evidence in a light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party. *Anderson,* 477 U.S. at 250–52, 106 S.Ct. at 2511–12; *Mares,* 971 F.2d at 494. Unsupported allegations without "any significant probative evidence tending to support the complaint" are insufficient, *see White,* 45 F.3d at 360 (internal quote and citation omitted), as are conclusory assertions that factual disputes exist. *Anderson,* 477 U.S. at 247–48, 106 S.Ct. at 2509–10.

### III.

35 U.S.C. § 287(a) states, in pertinent part:

Patentees, and persons making, offering for sale, or selling any patented article for or under them, ... may give notice to the public that the same is patented, either by fixing thereon the word "patent" or the abbreviation "pat.", together with the number of the patent.... In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice. Filing an action for infringement shall constitute such notice.

Section 287(a), therefore, provides two mechanisms for patentees to start the clock running for infringement damages: constructive notice by marking and actual notice of infringement. The purpose of section 287(a) is to avoid innocent infringement by encouraging notice to the public. *See American Medical Systems, Inc. v. Medical Engineering Corp.,* 6 F.3d 1523, 1538 (Fed.Cir.1993), *cert. denied,* 511 U.S. 1070, 114 S.Ct. 1647, 128 L.Ed.2d 366 (1994). Because there is no genuine dispute that Clancy provided neither constructive nor actual notice to Symbol of its alleged infringement until Clancy initiated this action in 1995, and both patents expired in 1994, Symbol cannot be liable for any damages. Accordingly, I will grant Symbol's motion for summary judgment.

■ Clancy argues that the notice requirements of section 287(a) do not apply to it because it never sold any articles under the patents. In support, Clancy cites *Wine Ry. Appliance Co. v. Enterprise Ry. Equipment Co.,* 297 U.S. 387, 395–98, 56 S.Ct. 528, 530–31, 80 L.Ed. 736 (1936). In *Wine,* the Court held that, under the predecessor to section 287(a), a nonproducing patentee had no duty to give actual notice to an alleged infringer for damages to begin accruing. I question whether the *Wine* rationale applies equally to modern section 287(a) and whether, even under *Wine,* a patentee that makes some patented articles but does not sell them is subject to section 287(a). I need not decide those issues, however, because section 287(a)

clearly applies to a nonproducing patentee, like Clancy, that licenses others to manufacture and sell patented articles in the United States. *See, e.g., Amsted Indus., Inc. v. Buckeye Steel Castings Co.,* 24 F.3d 178, 184–85 (Fed.Cir.1994).

Section 287(a) requires that "substantially all" patented articles be marked to constitute constructive notice. *Maxwell v. J. Baker, Inc.,* 86 F.3d 1098, 1111 (Fed.Cir.1996), *petition for cert. filed,* 65 U.S.L.W. 3416 (Nov. 25, 1996) (No. 96–851). In addition, marking must be "substantially consistent and continuous." *American Medical Systems,* 6 F.3d at 1537. However, where licensees are involved, courts apply a rule of reason, citing the difficulty in controlling third parties: "When the failure to mark is caused by someone other than the patentee, the court may consider whether the patentee made reasonable efforts to ensure compliance with the marking requirements." *Maxwell,* 86 F.3d at 1111–12.

As the patentee, Clancy has the burden of proving that it complied with the statutory requirements of section 287(a). *Motorola, Inc. v. United States,* 729 F.2d 765, 770 (Fed.Cir.1984). Accordingly, under *Celotex,* upon a well-supported motion for summary judgment by Symbol, Clancy has the burden to present evidence beyond the pleadings to show that genuine issues of material fact preclude summary judgment. 477 U.S. at 324, 106 S.Ct. at 2553.

### A. *Nippondenso License*

Clancy contends in its brief that questions of fact remain regarding whether: (1) the BHT 2061 incorporated the patented technology; (2) the BHT 2061 was sold in the United States after Nippondenso was licensed; and (3) the wrappings or packaging of the BHT 2061 contained any patent markings. If these issues are genuinely disputed, however, Clancy should have provided evidence to that effect. Instead, Clancy stated in its original response in May 1996 that more discovery was required regarding these questions. In the ensuing eight months, Clancy did nothing to supplement its disclosure in response to Symbol's summary judgment motion.

On January 22, 1997, out of an abundance of caution, I afforded both parties ten days to supplement their disclosures. Symbol submitted additional evidence gathered after the original briefing of the motion, but Clancy submitted nothing further. In total, the only evidence submitted by Clancy in response to Symbol's motion was a one page affidavit of Stanley Wolfson, which contains little information. I must, therefore, to decide this motion on the sparse record before me.

According to the record evidence, on March 1992, Clancy discovered that Nippondenso had been making and selling the BHT 2061 in the United States. To avoid litigation, Clancy negotiated a license with Nippondenso, under which Nippondenso would be permitted specifically to continue selling the BHT 2061. Deft.Ex. C. One test for determining whether a product is a "patented article" under section 287(a) is to ask whether the product would infringe the patent if sold by an unauthorized party. *Laitram Corp. v. Hewlett–Packard Co.,* 806 F.Supp. 1294, 1296 (E.D.La.1992). Clancy admits that the BHT 2061 infringed the patents. Pltf.Br. at 4. Accordingly, it is clear from the record that Nippondenso was a corporation that was producing and selling "patented articles for or under" Clancy within the meaning of section 287.

It is also undisputed in the record evidence that Nippondenso sold the BHT 2061 in "commercial quantities" in the United States after becoming Clancy's licensee. Nishimura Decl. ¶¶ 1–5. That Clancy itself produced and marked four or five items is inapposite to the notice question under section 287(a). The statute requires that substantially all products be marked appropriately to constitute constructive notice. *See Maxwell,* 86 F.3d at 1111. Faced with evidence that Nippondenso sold "commercial quantities" of unmarked patented articles in the United States, evidence of Clancy's limited attempts at production are not enough to create a genuine issue of fact whether "substantially all" the patented articles were marked. Nor has Clancy provided any evidence that it used reasonable efforts to ensure that Nippondenso marked its BHT 2061

product. Indeed, the contract granting Nippondenso the license contains no such restriction. Accordingly, there is no genuine question on the record before me that Clancy failed to meet the requirements of section 287(a) after April 27, 1992, the date of the license to Nippondenso.

Nippondenso's failure to mark commercial quantities of patented articles, however, does not entirely dispose of this case. Nippondenso was not licensed until April 27, 1992. Prior to that date, Nippondenso was an infringer, and its failure to mark its products while infringing Clancy's patents is not chargeable to Clancy. *See* Donald S. Chisum, *Patents,* § 20.03[7][ii] at 20–515 (1996). I have been unable to locate case law regarding whether a licensee's failure to mark negates prior constructive notice. The Federal Circuit has stated, in dicta, that "once marking has begun, it must be substantially consistent and continuous in order for the party to avail itself of the constructive notice provisions of the statute." *American Medical Systems,* 6 F.3d at 1537. However, I do not read that language as addressing the situation here—i.e., where marking may have been proper at the start of a patent term and only became improper after the present defendant began infringing.

For example, assume a patentee and all of its licensees have marked appropriately patented articles for several years before a new licensee begins selling unmarked products. Under such circumstances, it would make no sense to hold that the new licensee's failure to mark eliminates, retroactively, years of appropriate constructive notice.

If a defendant began infringing before the new licensee sold unmarked products, that defendant could hardly contend that it did not have sufficient constructive notice of the patent. Certainly, damages for infringement occurring after the unmarked products were sold and before actual notice of infringement would be excluded by section 287(a). Damages for infringement to the time unmarked products were sold, however, may be recoverable.

Unfortunately, the briefs for both parties assume, to some extent, that if Nippondenso's activities violated the terms of section 287(a), this case should be dismissed. Therefore, I must determine both whether the issue of marking prior to April 27, 1992, was appropriately raised by Symbol, and, if so, whether genuine issues of material fact preclude summary judgment on the question. Because I conclude that Symbol's motion adequately raised the issue of Termiflex's marking of its products under the patents and that Clancy has failed to raise a genuine issue of fact regarding whether Termiflex properly marked its products, I will grant Symbol's motion in its entirety.

### B. *Marking by Termiflex*

■ As the moving party, Symbol bears the initial burden to inform the court of the reasons why summary judgment is appropriate. *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552. To that end, Symbol cannot make naked assertions that genuine issues of fact do not exist. *See Baxter v. Weldotron Corp.,* 840 F.Supp. 111, 113 n. 2 (D.Utah 1993) (citing Justice Brennan's dissent in *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53). Rather, Symbol is obligated to point to portions of the record evidence that demonstrate why it is entitled to summary judgment. *Id.* Although disproving the existence of a fact is difficult, where Symbol's argument is simply that no evidence of a fact necessary to Clancy's case exists, Symbol must make efforts to determine the existence of such evidence and point to such efforts in the record. *Id.* ("[T]here can be no issue as to any material fact ... [when] a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."). Symbol has met its burden here.

Although most of its opening brief is directed to the activities of Nippondenso, Symbol stated in a footnote: "Interrogatory Answers also indicate that Clancy's predecessor in interest and licensee, Termiflex, also marketed goods without marking with the patent numbers." Deft.Br. at 3. Symbol also included a copy of an interrogatory answer by Clancy in which Clancy identified Termiflex as manufacturing a product "utilizing the claimed invention of ... the patents in suit." Deft.Ex. B. Clancy's response brief does not

discuss whether Termiflex marked its products.

Symbol's reply brief specifically references Clancy's failure to provide any information regarding Termiflex in its response: "Clancy's reply [sic] brief is notably silent on establishing any markings by Clancy's partner and licensee, Termiflex, on these products manufactured or sold in the United States, and this alone should be sufficient for a grant of summary judgment." In addition, in response to my January 22, 1997, invitation for the parties to supplement their materials to be considered on summary judgment, Symbol submitted interrogatory answers executed by Clancy on August 7, 1996. Deft. Supp. Ex. 1.

In interrogatory number 19, Symbol requested a list of all contacts between Clancy and Termiflex regarding marking of products with patent numbers. *Id.* The answer details two significant conversations with William Fletcher of Termiflex. On April 23, 1996, Mr. Fletcher allegedly stated that "he did recall some markings on Termiflex products but could not be more specific about the content of the markings." *Id.* Subsequently, on May 15, 1996, Mr. Fletcher stated that he "was unable to provide further documentation concerning product marking." *Id.*

I conclude that Symbol has met its burden under *Celotex* to identify Termiflex's alleged failure to mark its products with patent numbers as a basis for its summary judgment motion. Arguably, Symbol's assertion of section 287(a) as a complete defense to damages alone should have triggered Clancy's burden to respond affirmatively with evidence of appropriate marking by both Nippondenso and Termiflex. Given that (1) Symbol alleged specifically that Termiflex too failed to mark its patented articles, (2) Symbol attempted, through interrogatories, to discover whether Termiflex marked its products, and (3) Clancy had over nine months to supplement its responses, I conclude that Clancy had the burden under *Celotex* to respond. Clancy failed to do so, and I am left to decide whether the evidence presented by Symbol, itself, creates genuine issues of fact precluding summary judgment.

The only evidence regarding Termiflex's practice of marking its patented articles is the proffered out of court statement by Mr. Fletcher that he recalled "some markings on Termiflex products but could not be more specific about the content of the markings." Although this statement is hearsay, because it was offered in an exhibit by Symbol and arguably favors Clancy, I will consider that objection as having been waived by Symbol. However, this statement is not enough to create a genuine issue of fact whether Termiflex marked its products. Indeed, Fletcher stated specifically that he could not remember the content of the markings, and he later admitted that he could not provide further documentation regarding marking.

I conclude that, on the record before me, Clancy has no evidence to show that Termiflex appropriately marked its products. Because Termiflex, according to the record evidence, was the only authorized manufacturer of the patented products prior to April 27, 1992, Clancy is not entitled to any damages for infringement occurring even before the license with Nippondenso.

Both patents expired prior to the filing of this case. Therefore, injunctive relief is not available. In addition, because section 287(a) states that "no damages shall be recovered by the patentee in any action for infringement" without adequate notice, nominal, compensatory, and punitive damages are barred. As there is, therefore, no remedy available to Clancy, I will grant Symbol's motion for summary judgment and dismiss the case.

### IV.

Symbol also moves for an award of attorney fees under 35 U.S.C. § 285. Section 285 states: "The court in exceptional cases may award reasonable attorney fees to the prevailing party." The moving party has the burden to establish the exceptional nature of a case by clear and convincing evidence. *Carroll Touch, Inc. v. Electro Mechanical Systems, Inc.,* 15 F.3d 1573 (Fed. Cir.1993). Generally, a case is exceptional under section 285 only if there is evidence of manifest unfairness, bad faith, or inequitable conduct. *See CMI, Inc. v. Intoximeters,*

*Inc.,* 866 F.Supp. 342 (W.D.Ky.1994); *Eltech Systems Corp. v. PPG Indus.,* 903 F.2d 805, 810–11 (Fed.Cir.1990).

■ Symbol has not shown this case to be exceptional by clear and convincing evidence. Although, for the purposes of the summary judgment motion, I stated that Clancy and its licensees did not properly mark their patented products, the burden shifting analysis of *Celotex* does not apply in the context of this motion. Symbol has not shown by clear and convincing evidence that Clancy did not comply with section 287 or that it knew or should have known of such noncompliance when it filed its complaint. Accordingly, I do not find this case exceptional under section 285, and I will deny Symbol's motion for attorney fees.

Accordingly, it is ORDERED that:

1. Symbol's motion for summary judgment is GRANTED, and this case is DISMISSED;

2. Symbol is awarded its costs;

3. Symbol's motion for attorney fees is DENIED.